THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. BENITO DELGADO MARTÍNEZ, Defendant and Appellant.

No. CR-66-461.     Decided December 6, 1968.

704

*Santos P. Amadeo* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Elpidio Arcaya, Assistant Solicitor General,* for The People.

—o—

*Santos P. Amadeo* for appellant. *J. F. Rodríguez Rivera, Acting Solicitor General,* and *Elpidio Arcaya, Assistant Solicitor General,* for The People.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Benito Delgado Martínez was accused and convicted by the court of the offense of burglary in the first degree.

He assigns on appeal that his judgment is void because he did not waive expressly and intelligently his right to a trial by jury and because he was deprived of effective legal assistance.

1. The record on this matter shows the following:

"JUDGE:

Are the parties ready?

"MR. NAVARRO:

We are ready.

"PROSECUTING ATTORNEY:

We are ready.

"JUDGE:

Is this case to be tried by a jury or by the court?

"MR. NAVARRO:

By the court.

"JUDGE:

Colleague, did you speak with the defendant about his waiver?

"MR. NAVARRO:

Yes, your Honor.

"JUDGE:

Are you Benito Delgado Martínez?

"DEFENDANT:

Yes, sir.

"JUDGE:

Are you the defendant in this case?

"DEFENDANT:

Yes, sir.

"JUDGE:

Are you accused of burglary in the first degree?

"A. Yes, sir.

"JUDGE:

Your attorney has informed the court that you waive your right to a trial by jury and that you want the case to be tried by the court? Is that correct?

"A. Yes, sir.

"JUDGE:

You have not received any offer, nor threat, nor have been coerced to waive your right to a trial by jury?

"A. No, sir.

"JUDGE:

The court accepts as voluntary the waiver made by defendant of his right to a trial by jury, and the case will continue to be heard by the court."

■ It is evident that the trial judge did not previously warn appellant what the waiver of the right to a trial by jury means. *People* v. *Sierra Serrano*, Judgment of March 19, 1968; *People* v. *Juarbe de la Rosa*, 95 P.R.R. 736, Judgment on reconsideration, February 21, 1968.

There is nothing in the record to show the circumstances, facts, or knowledge (1) on which appellant relied to answer that "he was conscious" of his waiver to the right to a trial by jury, or (2) to justify the trial judge in concluding that such answer was indicative that appellant knew the meaning and scope of the act of waiving the right to a trial by jury, and of the difference between being tried by the court and by the jury.

■ However, we do not find any reason to extend the pronouncement of *Juarbe, supra*, to cases prosecuted prior to that decision. Therefore, with respect to the waiver of the right to a trial by jury, it is available only to persons whose trials commenced after February 21, 1968, date of the judgment of *Juarbe, supra*. Contrary to what is alleged, it is in *Juarbe* where for the first time, in a positive and unambiguous manner, we held that the trial judge is bound to explain to the defendant the meaning of the waiver of the right to a trial by jury and to warn him of the consequences thereof. The isolated expressions contained in former cases did not have the scope which is sought to give them; the *ratio decidendi* of these decisions centered on whether the waiver

had been personally made by the defendant as required by Rule 111 of the Rules of Criminal Procedure. Insofar as the retroactive application of the decision in *Juarbe* is concerned, we are satisfied that as held in *Roberts* v. *Russell*, 392 U.S. 293 (decided June 10, 1968), it is not a rule of criminal procedure fashioned to correct serious flaws in the fact-finding process at trial and any departure therefrom does not affect the basis of a fair and impartial trial because the defendant was assured a fair determination of his guilt or innocence.[1]

Any doubt in this respect disappears in view of the action taken by the Federal Supreme Court on June 17, 1968 in *Carcerano* v. *Gladden*, 392 U.S. 631, refusing to extend the rule announced in *Duncan* v. *Louisiana*, 391 U.S. 145, and *Bloom* v. *Illinois*, 391 U.S. 194—the right to jury trial in certain misdemeanor cases—to prosecutions where trials began prior to May 20, 1968, date when these last two decisions were rendered.

■ 2. The assignment of lack of legal assistance is based on the fact that the attorney who represented appellant during the trial did not appear at the time sentence was pronounced; that the court appointed another attorney to represent him then; that this attorney requested the court to reconsider his appointment as defendant's counsel; and that the court denied said petition.

Appellant, however, has not shown that said attorney acted or failed to act in such a manner as to prejudice him, nor has he shown the prejudice he has suffered as a result of the court's action, that is to say, that because appellant did not have effective legal assistance at that time, one or more of the causes enumerated in Rule 168 of the Rules of

---

[1] It should be borne in mind in that respect that until the approval of the Rules of Criminal Procedure of 1963, the defendant's attorney could waive the right to a trial by jury. *People* v. *Cabán Rosa*, 92 P.R.R. 844 (1965).

Criminal Procedure why sentence should not be pronounced in this case was not adduced. *People* v. *Hernández*, 94 P.R.R. 111 (1967).

In view of the foregoing, the judgment rendered in this case by the Superior Court, San Juan Part, on June 29, 1966, will be affirmed.

Mr. Justice Santana Becerra dissented in a separate opinion in which Mr. Justice Hernández Matos and Mr. Justice Dávila concur.

—O—

MR. JUSTICE SANTANA BECERRA, with whom MR. JUSTICE HERNÁNDEZ MATOS and MR. JUSTICE DÁVILA concur, dissenting.

San Juan, Puerto Rico, December 6, 1968

The same judicial flaw which gave rise to the reversal of the judgment and granting of a new trial in *People* v. *Juarbe de la Rosa*, decided on reconsideration by judgment of February 21, 1968 (95 P.R.R. 736), was again committed in this case. The flaw is the failure of the trial court to see that the waiver of the constitutional right to a trial by jury is intelligently made.

In our judgment in *Juarbe de la Rosa* we made the following recital:

"In judgment of May 19, 1966, *People* v. *Abreu*, CR. 65-411, we reversed in a case in which the record did not show the manner in which the right to a trial by jury had been waived. It was alleged therein that it had not been waived personally. As a general rule, we expressed ourselves thus: 'Judges should take care that the record clearly shows that the waiver of the right to a trial by jury be personally made by the defendant, *after warning him of the meaning thereof.*' (Italics ours.)

"In *People* v. *Carmona Rodríguez*, 90 P.R.R. 436, 437 (1964), in which case an attorney could waive the trial by jury in appellant's name, at least the judge asked the defendant personally whether such waiver was made *voluntarily.*

"In *People* v. *Díaz,* 87 P.R.R. 656, 661 (1963), we stated that 'Where a defendant requests to be tried by a jury, based on his constitutional right to do so, *the waiver of such right should be made by defendant spontaneously or voluntarily.'* (Italics ours.)

"In judgment of November 18, 1963, *People* v. *Túa,* 89 P.R.R. 415 (1963), we held that where the record discloses that the defendant *understood* the consequences of waiving trial by jury . . . he could not allege later that the trial court did not exercise its function of giving credit to the witnesses when the case was submitted on another record.

"In *People* v. *Cabán Rosa,* 92 P.R.R. 844 (1965), we reaffirmed the former views in saying that 'The fundamental thing is that the waiver be done voluntarily and intelligently.'

"Aside from the specific occasions mentioned, although a constitutional right may be waived, the doctrine of general acceptance requires that such waiver be made intelligently, or conscious of what the waiver implies in its consequences.

"The record of this case does not contain any element to allow the trial court to determine by itself whether there was intelligence, spontaneity, wilfullness, and understanding in defendants' attitude in waiving the jury. The court did not make any effort to bring those elements to the record and this could be accomplished by giving defendants the necessary explanations and warnings about the meaning of their acts and the consequences."

In the present judgment it is said that "we do not find any reason to extend the pronouncement of *Juarbe, supra,* to cases prosecuted prior to that decision"; and that therefore, the constitutional protection we gave in said case is available only to persons whose trials commenced after February 21, 1968, date of the judgment of *Juarbe.* Nothing further from the juridical truth than the expression that there is no reason to extend the pronouncement of *Juarbe* to cases already tried.

The decision in *Juarbe* does not establish rules for the first time. All those expressions and warnings to trial courts on the adequate treatment to be given to that constitutional

guarantee existed. Trial judges were duly warned, at least, since May 19, 1966 where, reversing in *People* v. *Abreu*, we said that the waiver of the right to a trial by jury should clearly appear from the record *after warning him of the meaning thereof*. Even prior to the decision in *Abreu* the trial judges had sufficient warning when Rule 111 of the Rules of Criminal Procedure, which rendered ineffective some of our less exacting case law, became effective.

Although in classic law judicial decisions have full legal effect from the moment they are rendered and are final (*firmes*) because, unlike the legislative process which creates the law, the decisions set it forth as the law has always been, it has been accepted that the court has power to apply, in the light of specific considerations of public policy, a judgment it has rendered, after a specific time. See the problem discussed at length in *Linkletter* v. *Walker*, 381 U.S. 618, which put an end to the debate of whether *Mapp* v. *Ohio*, 367 U.S. 643 was applicable to cases which had become final before *Mapp*. It has been a decisive factor in these considerations, whether the decision is invoked by way of indirect collateral attack, as in *Linkletter* and in *Rivera Escuté*, or by way of direct appeal from a judgment which has not yet become final. See *Rivera Escuté* v. *Delgado, Warden*, 92 P.R.R. 746, 764 *et seq.* (1965).

Subsequent to *Linkletter*, the Supreme Court has offered examples of the application of a judgment. The Supreme Court, in *Johnson* v. *New Jersey*, 384 U.S. 719, gave effect to the rule of exclusion of evidence in *Escobedo* v. *Illinois*, 378 U.S. 478 and in *Miranda* v. *Arizona*, 384 U.S. 436, in trials held subsequently to the dates on which those cases were decided. It should be observed that *Johnson* v. *New Jersey* is likewise a collateral attack by habeas corpus to convictions definitively completed and which have become final years before *Escobedo* and *Miranda*.

In *Stoval* v. *Denno*, 388 U.S. 293, another collateral attack by habeas corpus, the Supreme Court conferred effect to its doctrine of exclusion of evidence in *United States* v. *Wade*, 388 U.S. 218 and in *Gilbert* v. *California*, 388 U.S. 263, from the date these decisions were rendered.

According to *Linkletter*, and see *Tehan* v. *Shott*, 382 U.S. 406, there should exist considerations of public policy and of administration of justice in order to depart from the general rule of law to justify a court in enforcing its decision after a particular event.

It should be noted that those decisions are produced by a set of facts which are not the judicial process in itself. They are actions of the Executive Power in the function of pursuing the offense which are at variance with or are a threat to the constitutional guarantees of the citizen who confronts justice. The purpose of such decisions has been to eliminate such executive practices or to discourage them and to exercise a prophylaxis function in police actions which are in violation of the citizens' rights, in not permitting that the fruit of such actions be utilized in the judicial process.

In the case of decisions which correct errors of a judicial nature in the course of a prosecution, particularly when such errors affect constitutional guarantees, the rule is different. Especially when it is not a question of a collateral attack but of the direct review of a judgment which has not yet become final (*firme*).

*Griffin* v. *Illinois*, 351 U.S. 12, which constitutionally vacated a judgment of conviction for the refusal of a state court to furnish the record free to an indigent appellant, was retroactively applied in *Eskridge* v. *Washington Prison Bd.*, 357 U.S. 214. *Jackson* v. *Denno*, 378 U.S. 368, has been retroactively applied, like *Gideon* v. *Wainwright*, 372 U.S. 335, on the right of legal assistance during the judicial process. The decisions which vacated convictions for lack of legal assistance in court were retroactively applied even

in collateral attack. This Court applied retroactively, also in collateral attack the rule established in *Ex parte Hernández*, 54 P.R.R. 396 (1939) on the right to the assistance of counsel during the proceedings and the obligation imposed on the court to protect the waiver of such right by seeing that it is intelligently made.

The cases examined show that it is evident that there should exist some rational and fair reason, of public policy and of administration of justice, to justify that the juridical effect of a judicial decision should not be applied to a particular case. In the cases where it has occurred, such considerations have been set forth and justified. The action cannot be merely arbitrary, or an *ipse dixit*.

I do not find in this case the reasons, they are not set forth, for refusing to grant to this appellant the new trial granted by this Court to Juarbe de la Rosa where a similar judicial error and constitutional flaw were committed. The constitutional protection, once acknowledged, should not be object of bargaining. In my separate opinion in *Juarbe de la Rosa*, I stated certain considerations which showed the imperative need for the judges to insure defendants the full constitutional protection with respect to a waiver intelligently made and with full knowledge of its consequences, of the right to a trial by jury.

From *Ex parte Resto*, 55 P.R.R. 700 (1939), we take these words of the Court speaking through Mr. Justice Travieso, who delivered the opinion of the Court in *Hernández:* (55 P.R.R. 712)

"The commentators of our decision in the latter case, [*Ex parte Hernández*], have been somewhat alarmed by the thought that the doors of the Penitentiary would be opened wide to release thousands of criminals. In reality there is no reason to be thus alarmed. Of the forty-four convicts released since we rendered our decision in *Ex parte Hernández*, the greater part had already served the term required to apply for freedom on parole and could have obtained it through an Executive Order,

without recurring to the courts. But, even though the number of convicts released were much greater, we would still maintain that it is better to open the gates of the Penitentiary to all those there confined who, although guilty, were illegally tried and sentenced, than keep them shut for one only, who being innocent, has yet been sentenced in violation of his constitutional rights and without due process of law."

The majority opinion invokes the decision in *DeStefano* v. *Woods* and *Carcerano* v. *Gladden*, 392 U.S. 631, in support of its decision. This decision renders applicable the decisions of *Duncan* v. *Louisiana*, 391 U.S. 145 and *Bloom* v. *Illinois*, 391 U.S. 194, to trials held after May 20, 1968, date on which they were pronounced.

The *Duncan* and *Bloom* cases compelled the States to grant the jury trial guaranteed by the Sixth Amendment and until that time applicable only in the federal courts. They changed a fundamental rule of law as to the federative relation in the administration of justice.

The reasons why those decisions were given only prospective effect appear clearly stated in *DeStefano* and *Carcerano*. They do not govern the situation in the case at bar where a court failed to comply with rules of law in force during the course of the trial, concerning a fundamental constitutional right.

Moreover, the *DeStefano* and *Carcerano* cases, like the previous ones I have mentioned, were collateral attacks in proceedings subsequent to the judgment. In the instant case, we have the direct appeal from the conviction.

On the other hand, the decision which could orient the case at bar is that of *Roberts* v. *Russell*, 392 U.S. 293, decided June 10, 1968, and not that of *DeStefano* invoked by the majority, which as I have said, decides the prospective effect to be given to *Duncan* and to *Bloom* considering the nature of the question involved in these cases.

In *Russell* it was decided that the decision of *Bruton* v. *United States*, 391 U.S. 123—this decision overruled the

doctrine in *Delli Paoli* v. *United States*, 352 U.S. 232, which permitted the admission at the trial of codefendants' confessions implicating other codefendants—was to be applied retroactively and that such retroactive application had effect in federal as well as in state courts. The Supreme Court says in *Russell* (p. 294):

"Although *Bruton* involved a federal prosecution and this is a state prosecution, the right of cross-examination secured by the Confrontation Clause of the Sixth Amendment is made applicable to the States by the Fourteenth Amendment. *Pointer* v. *Texas*, 380 U.S. 400; *Douglas* v. *Alabama*, 380 U.S. 415.

" 'We have . . . retroactively applied rules of criminal procedure fashioned to correct serious flaws in the fact-finding process at trial.' *Stovall* v. *Denno*, 388 U.S. 293, 298. See *Jackson* v. *Denno*, 378 U.S. 368; *Gideon* v. *Wainwright*, 372 U.S. 335; *Reck* v. *Pate*, 367 U.S. 433; *Linkletter* v. *Walker*, 381 U.S. 618, 639, n. 20; *Johnson* v. *New Jersey*, 384 U.S. 719, 727–728; cf. *Brookhart* v. *Janis*, 384 U.S. 1. Despite the cautionary instruction, the admission of a defendant's confession which implicates a codefendant results in such a 'serious flaw.' The retroactivity of the holding in *Bruton* is therefore required; the error 'went *to the basis of fair hearing and trial because the procedural apparatus never assured the [petitioner] a fair determination*' of his guilt or innocence. (Italics ours.)

.    .    .    .    .    .    .    .

"And even if the impact of retroactivity may be significant, the constitutional error presents a serious risk that the issue of guilt or innocence may not have been reliably determined."

No great effort is needed to distinguish the situation confronted in *Duncan* to which *DeStefano* gave prospective effect, and that confronted in *Bruton*, to which *Roberts* v. *Russell* gives retroactive effect; nor to conclude that the situation in the case at bar is governed by that of *Bruton* and *Roberts*, and not by *Duncan* and *DeStefano*.

Since July 1963, the Rules of Criminal Procedure imposed on trial judges the duty which was not performed in this case. In my opinion, at least, in the trials held as of May 19;

1966 date of the decision of *People* v. *Abreu,* corrective action should be given granting a new trial, if the judge did not duly protect the constitutional right to a trial by jury.

I would reverse the judgment and would grant a new trial.

—O—

ON MOTION FOR RECONSIDERATION

San Juan, Puerto Rico, March 7, 1969

PER CURIAM: Appellant was convicted by the court without a jury of the offense of burglary in the first degree. He appealed from the judgment rendered against him, and on December 6, 1968, we affirmed it on the grounds of the opinion delivered. We then held (1) not to give retroactive effect to the doctrine in the case of *People* v. *Juarbe de la Rosa,* 95 P.R.R. 736, decided on reconsideration, on February 21, 1968, concerning the waiver of the right to jury trial, and consequently not to apply it to the case of the appellant whose trial was held prior to *Juarbe* and (2) that the lack of legal assistance at the pronouncement of sentence did not prejudice the substantial rights of the defendant in accordance with *People* v. *Hernández,* 94 P.R.R. 111, decided February 24, 1967.

Appellant requested the reconsideration of our judgment and by order of January 17, 1969 we decided to hear the Solicitor General by brief and we have heard him with respect to the error assigned concerning the lack of legal assistance at the pronouncement of sentence.

Appellant was represented during the trial and until judgment of conviction was entered on May 6, 1966, by his counsel, Mr. Francisco Navarro. The pronouncement of sentence was set for June 13, 1966, but was later postponed to June 29 of the same year. On that date the defendant appeared without being assisted by counsel. At that moment

the court appointed Mr. Borrero Ríos to represent the defendant. Said attorney requested the reconsideration of his appointment but the court denied it, and proceeded to pronounce sentence.

■ It appears from the record that defendant-appellant did not have an actual and effective legal assistance during the pronouncement of sentence. The appointment of Mr. Borrero Ríos to represent him at this act was pro forma. Appellant was, therefore, devoid of legal assistance at this stage of the proceedings. The constitutional guaranty of the due representation by counsel during the criminal prosecution is extensive to the pronouncement of sentence. *Ruiz* v. *Rivera, Warden of the Insular Penitentiary*, 71 P.R.R. 499 (1950). It is not necessary for the defendant to show that lack of legal assistance at the pronouncement of sentence prejudiced him. The court's action in pronouncing sentence against defendant, without the latter being duly assisted by counsel, violated his constitutional rights to the due process of law and such action is null. *Chandler* v. *Fretag*, 348 U.S. 3; *Mempa* v. *Rhay*, 389 U.S. 128, *McConnell* v. *Rhay*, 21 L.Ed.2d 2.

We consider that the case of *People* v. *Hernández*, 94 P.R.R. 111 (1967), is applicable to the point under discussion herein. In that case the defendant was represented by his counsel when sentence was pronounced. The error assigned consisted in the failure of the judge to ask the defendant whether he had any legal cause to show why sentence should not be pronounced. After considering the facts of that case as stated in the opinion we decided that the defendant had not established that such omission was prejudicial to him.

■ We ratify now our previous decision in the sense, that up until the pronouncement of sentence the defendant in this case was not deprived of his constitutional rights nor were errors committed that would warrant setting aside

such sentence. But since the pronouncement of sentence is void, the same will be vacated and the case will be remanded for the pronouncement of new sentence with the constitutional guarantee of legal assistance which protects the defendant.

Mr. Justice Santana Becerra agrees with the result but maintains his original position as to the retroactive effect of the case of *People* v. *Juarbe de la Rosa, supra.*