## CHANDLER *v.* WARDEN FRETAG.

No. 39.   Argued October 18, 1954.—Decided November 8, 1954.

*Earl E. Leming* argued the cause for petitioner.   With him on the brief were *Jas. P. Brown* and *Carl A. Cowan.*

4

*Knox Bigham,* Assistant Attorney General of Tennessee, argued the cause for respondent. With him on the brief were *Roy H. Beeler,* Attorney General, and *Nat Tipton,* Assistant Attorney General.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

Petitioner is held in the custody of respondent, Warden of the Tennessee State Penitentiary, under a sentence of life imprisonment as an habitual criminal. Challenging the validity of that sentence under the Fourteenth Amendment, he commenced this action in the Tennessee courts to obtain his freedom. We granted certiorari, 347 U. S. 933, because of the substantial question presented by his constitutional claim.

The basic facts are undisputed. Petitioner is a middle-aged Negro of little education. He was indicted on March 10, 1949, for the offense of housebreaking and larceny, an offense punishable by a term of three to ten years. The indictment charged him with breaking and entering a business house and stealing therefrom sundry items of the aggregate value of $3. Following his arrest, petitioner was released on bond while awaiting trial set for May 17, 1949. On that day, without an attorney and without notice of any habitual criminal accusation against him, petitioner appeared in court intending to plead guilty to the indictment. He "felt that an attorney could do him no good on said charge [housebreaking and larceny]." When his case was called for trial, he was orally advised by the trial judge that he would also be tried as an habitual criminal because of three alleged prior felonies.[1]  He

---

[1] The Tennessee Habitual Criminal Act, at the time of petitioner's trial, permitted an oral accusation. Williams' Tenn. Code, 1934 (1949 Supp.), § 11863.5. It was subsequently amended to require the inclusion of the accusation in the indictment on the substantive offense. Tenn. Code, 1932 (1950 Supp.), § 11863.5.

was informed that conviction under the Tennessee Habitual Criminal Act carries a mandatory sentence of life imprisonment with no possibility of parole.[2]  Petitioner promptly asked for a continuance to enable him to obtain counsel on the habitual criminal accusation.  His request was summarily denied, a jury was impaneled, and the case proceeded immediately to trial.  Petitioner entered his plea of guilty to the housebreaking and larceny charge, and the prosecution introduced evidence in corroboration of the plea.  At the conclusion of the trial, the judge instructed the jury to raise their right hands if they accepted petitioner's guilty plea on the housebreaking and larceny charge and if they approved of a three-year sentence on that charge.  The jury responded by raising their right hands.  The judge then instructed the jury to raise their right hands a second time if they found petitioner to be an habitual criminal.  Once again the jury, without ever having left the jury box, raised their right hands.  The entire proceeding—from the impaneling of the jury to the passing of sentence—consumed between five and ten minutes.

Three years later, having served his sentence on the housebreaking and larceny charge, petitioner applied to the Circuit Court of Knox County for habeas corpus relief.[3]  He alleged that his sentence as an habitual criminal was invalid on the ground, among others, that he had been denied an opportunity to obtain counsel in his defense.[4]

---

[2] Williams' Tenn. Code, 1934 (1949 Supp.), § 11863.2.

[3] Under Tennessee law, a defendant sentenced on both a felony charge and an habitual criminal accusation must serve his term on the felony charge before he can attack the validity of his habitual criminal sentence in habeas corpus proceedings. See *State ex rel. Grandstaff* v. *Gore*, 182 Tenn. 94, 98, 184 S. W. 2d 366, 367.

[4] Petitioner also alleged, wholly apart from his claim of denial of counsel, that he was deprived of due process by the failure of the trial court to give him any pretrial notice of the habitual criminal accusation.  We find it unnecessary to pass on this contention in

At a hearing on the application, petitioner, his wife, his brother, a juror, and the prosecuting attorney testified as to their recollection of petitioner's trial.[5] All five witnesses were in full accord as to the above-stated facts. They differed only on whether petitioner had pleaded guilty to the habitual criminal accusation and whether the prosecution had introduced any evidence concerning petitioner's prior convictions. The prosecuting attorney, the only witness for the state, testified that petitioner had pleaded guilty to the habitual criminal accusation as well as the housebreaking and larceny charge, and that the record of petitioner's prior convictions had been read to the jury; the other four witnesses denied it. In all other respects, the testimony of the prosecuting attorney substantiated the testimony of the other four witnesses. Thus he conceded that petitioner had not been represented by counsel, that petitioner had not been given any pretrial notice of the habitual criminal accusation, that petitioner "said he wanted the case put off as he was advised by the Court that he was being tried as an habitual criminal in addition to house breaking and larceny. He asked that the case be put off so he could get a lawyer and [the trial judge] told him he had had since January up to May to get a lawyer."

The Circuit Court, after hearing the case on the merits, accepted—as does the respondent here—petitioner's factual allegations as to the denial of counsel. The Circuit Court nevertheless upheld the validity of peti-

---

view of our disposition of the case. We also note that in 1950, subsequent to petitioner's trial, the Tennessee Habitual Criminal Act was amended to require pretrial notice. Tenn. Code, 1932 (1950 Supp.), § 11863.5.

[5] The record of petitioner's trial consists only of the indictment and the judgment of conviction. There was no stenographic transcript of the proceedings. The judgment recites that petitioner had "counsel present," but it is conceded that the recital is not true.

tioner's sentence and the Tennessee Supreme Court affirmed. Both courts emphasized that the Tennessee Habitual Criminal Act, like similar legislation in other states, does not create a separate offense but only enhances a defendant's punishment on being convicted of his fourth felony. *Tipton* v. *State,* 160 Tenn. 664, 672–678, 28 S. W. 2d 635, 637–639. See also *McDonald* v. *Massachusetts,* 180 U. S. 311, 313; *Graham* v. *West Virginia,* 224 U. S. 616, 623–624. From that premise, the courts below reasoned that petitioner had waived any right to counsel on the habitual criminal accusation by waiving counsel on the housebreaking and larceny charge. With this conclusion, we cannot agree.

Section 1 of the Act defines "habitual criminal" in considerable detail.[6] Section 7 prescribes standards for the admissibility of the record of the prior convictions of a defendant charged with being an habitual criminal.[7]

---

[6] Williams' Tenn. Code, 1934 (1949 Supp.), § 11863.1:

"Any person who has either been three times convicted within this state of felonies, two of which, under section 11762 of the Code of Tennessee, rendered him infamous, or which were had under sections 10777, 10778, 10788, 10790 and 10797 of said Code, or which were for murder in the first degree, rape, kidnapping for ransom, treason or other crime punishable by death under existing laws, but for which the death penalty was not inflicted, or who has been three times convicted under the laws of any other state, government or country of crimes, two of which, if they had been committed in this state, would have rendered him infamous, or would have been punishable under said sections 10777, 10778, 10788, 10790 and 10797 of said Code, or would have been murder in the first degree, rape, kidnapping for ransom, treason or other crime punishable by death under existing laws, but for which the death penalty was not inflicted, shall be considered, for the purposes of this act, and is hereby declared to be an habitual criminal, provided that petit larceny shall not be counted as one of such three convictions, but is expressly excluded, and provided further that each of such three convictions shall be for separate offenses, committed at different times, and on separate occasions."

[7] Williams' Tenn. Code, 1934 (1949 Supp.), § 11863.7.

This section, the Tennessee Supreme Court has held, clearly authorizes "[a]n issue of fact as to the verity of such record, or as to the identity of the accused with the person named in such record . . . ." *Tipton* v. *State,* 160 Tenn. 664, 678, 28 S. W. 2d 635, 639. Proof of the defendant's prior convictions is ". . . a condition precedent to the imposition of the increased punishment provided." *Tipton* v. *State, supra.* Section 6 of the Act, moreover, provides that the increased punishment cannot be imposed unless the jury specially finds that the defendant is an habitual criminal as charged.[8] "Under section 6 of the Act," according to the Tennessee Supreme Court, "the question as to whether the defendant is an habitual criminal is one for the jury to decide." *McCummings* v. *State,* 175 Tenn. 309, 311, 134 S. W 2d 151, 152. In short, even though the Act does not create a separate offense, its applicability to any defendant charged with being an habitual criminal must be determined by a jury in a judicial hearing. Compare *Williams* v. *New York,* 337 U. S. 241. That hearing and the trial on the felony charge, although they may be conducted in a single proceeding, are essentially independent of each other.[9] Thus, for example, it is possible that the jury in the instant case might have found petitioner guilty on the housebreaking and larceny charge and yet found him innocent of being an habitual criminal. Apparently recognizing this possibility, petitioner at the earliest possible moment affirmatively sought an opportunity to obtain counsel on the habitual criminal accusation. Immediately on being informed of the accusation and suddenly finding himself in danger of life imprisonment, he re-

---

[8] Williams' Tenn. Code, 1934 (1949 Supp.), § 11863.6.

[9] Compare, *e. g.,* the West Virginia procedure which provides for a separate hearing on the habitual criminal issue. See *Graham* v. *West Virginia,* 224 U. S. 616.

quested a continuance so that he could engage the services of an attorney; but the trial court refused the request and forced him to stand immediate trial. On these undisputed facts, it is clear beyond question that petitioner did not waive counsel on the habitual criminal accusation. See *Rice* v. *Olson,* 324 U. S. 786, 788–789.

The Tennessee Attorney General denies, however, that petitioner had any federal constitutional right to counsel. He relies on the doctrine enunciated in *Betts* v. *Brady,* 316 U. S. 455. But that doctrine has no application here. Petitioner did not ask the trial judge to furnish him counsel; rather, he asked for a continuance so that he could obtain his own. The distinction is well established in this Court's decisions. *Powell* v. *Alabama,* 287 U. S. 45, 71; *Betts* v. *Brady,* 316 U. S. 455, 466, 468; *House* v. *Mayo,* 324 U. S. 42, 46. Regardless of whether petitioner would have been entitled to the appointment of counsel, his right to be heard through his own counsel was unqualified.[10] See *Palko* v. *Connecticut,* 302 U. S. 319, 324–325. As this Court stated over 20 years ago in *Powell* v. *Alabama, supra,* at 68–69:

> "What, then, does a hearing include? Historically and in practice, in our own country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right. The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is in-

---

[10] Tennessee statutes appear to confer both rights on a defendant in a criminal case. Tenn. Code, 1932, §§ 11733, 11734, 11547, 11548. See also Art. I, § 9, of the Declaration of Rights in the Tennessee Constitution.

capable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. *He requires the guiding hand of counsel at every step in the proceedings against him.* Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. *If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.*" (Italics added.)

A necessary corollary is that a defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth. *Avery* v. *Alabama,* 308 U. S. 444, 446; *House* v. *Mayo,* 324 U. S. 42, 46; *White* v. *Ragen,* 324 U. S. 760, 764; *Hawk* v. *Olson,* 326 U. S. 271, 277–278. By denying petitioner any opportunity whatever to obtain counsel on the habitual criminal accusation, the trial court deprived him of due process of law as guaranteed by the Fourteenth Amendment.

It follows that petitioner is being held by respondent under an invalid sentence. The judgment below, sustaining the denial of habeas corpus relief, is accordingly reversed.

*Judgment reversed.*