**Petition of Earnest G. BLAND for the Writ of Habeas Corpus.**

**Civ. A. No. 8830.**

United States District Court
S. D. Texas, Houston Division.

Sept. 21, 1955.

Earnest G. Bland, pro se.

John Ben Shepperd, Atty. Gen. of Texas, Will D. Davis, Asst. Atty. Gen. of Texas, for respondent.

KENNERLY, District Judge.

Sentenced in a Texas State Court to incarcerated there, Earnest G. Bland in imprisonment for life in the Texas State Penitentiary as an habitual criminal and 1952 petitioned this court for the writ of habeas corpus. His petition was denied July 21, 1952.[1] This is a similar proceeding in which Bland again petitions this court for the writ of habeas corpus. Then, as now, it was Bland's complaint that he was tried in the State Court without having the assistance of counsel. The State of Texas in that proceeding made full answer, and statement of, and attached copies of the proceedings under which Bland is held.

Now, citing Chandler v. Fretag, 348 U. S. 3, 75 S.Ct. 1, 4, 99 L.Ed. 4, decided November 8, 1954, Bland again presses upon me that his petition should be granted. I think he is right. In the former case I failed to recognize the distinction clearly pointed out in Chandler v. Fretag, between the failure of a trial court to appoint counsel for a defendant and failure to allow a defendant time and opportunity to obtain counsel of his own choosing.[2]

---

1. That proceeding was Ex Parte Earnest G. Bland, No. 6798, and the wording of the material part of the Memorandum and Order denying the petition is as follows:

   "Copies attached to the State's Answer show:

   "(a) That Petitioner was duly indicted and tried in the District Court of Hardeman County, Texas, a jury found him guilty, and he was duly sentenced to life imprisonment as being an habitual criminal. *He was not in such proceeding represented by counsel.*

   "(b) His case was appealed to the Court of Criminal Appeals of Texas, and that Court by opinion dated June 24, 1949, affirmed Petitioner's conviction in the District Court of Hardeman County. However, about that time Petitioner escaped, and the Court of Criminal Appeals thereupon withdrew its opinion of June 24, 1949, and dismissed his appeal.

   "(c) In March 1950, Petitioner, then represented by counsel, filed his petition for the Writ of Habeas Corpus with the Court of Criminal Appeals of Texas. This was denied [154 Tex.Cr.R. 170], 228 S.W.2d 170. Certiorari was denied by the Supreme Court of the United States [Bland v. Ellis], 339 U.S. 988 [70 S.Ct. 1011, 94 L.Ed. 1390].

   "I have carefully examined all of these documents.

   Petitioner's complaint upon his appeal *in the Court of Criminal Appeals was that he was denied counsel at his trial.* The opinion of the Court of Criminal Appeals (June 24, 1949) holds this claim to be without merit. His petition to the Court of Criminal Appeals for the Writ of Habeas Corpus again clearly brings forward this claim. While the Court of Criminal Appeals, in passing upon Petitioner's application for the Writ of Habeas Corpus, bases its action upon the fact that Petitioner had escaped from custody and his appeal had been dismissed, the Supreme Court of the United States refused Petition for Certiorari.

   \* \*. \* \* \*

   "I find nothing which would justify or require this court to grant the Writ of Habeas Corpus, and I, therefore, decline either to grant such Writ or to enter an Order to Show Cause why same should not be granted."

2. In Chandler v. Fretag it is said:
   "The Tennessee Attorney General denies, however, that petitioner had any federal constitutional right to counsel. He relies on the doctrine enunciated in Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595. But that doctrine has no application here. Petitioner did not ask the trial judge to furnish him counsel; rather, he asked for a continuance so that he could obtain his own. The distinction is well established in this Court's decisions. Powell v. State of Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158; Betts v. Brady, 316 U.S. 455, 466, 468, 62 S. Ct. 1252, 1258, 1259, 86 L.Ed. 1595; House v. Mayo, 324 U.S. 42, 46, 65 S. Ct. 517, 520, 89 L.Ed. 739. Regardless

This record shows the following:

(a) In No. 6798 the facts were fully developed by the parties, and the record in that case is adopted and considered as part of the record in this case. In addition the parties have been given an opportunity to, and have added some additional matter to the record.

(b) The record shows the trial of Bland without counsel in the District Court of Hardeman County, Texas, and his conviction and sentence as an habitual criminal to life imprisonment in the Texas Penitentiary. Also his appeal to the Texas Court of Criminal Appeals where the judgment of the District Court was affirmed.

(c) The record shows that Bland has exhausted all his remedies in the State Courts and has applied for and been refused certiorari by the Supreme Court of the United States.

(d) These dates are important. The record shows that Bland was indicted by a grand jury of the trial court *March 1, 1949.* He was arraigned, pleaded not guilty, and was tried with a jury in such court without counsel on *March 8, 1949.* He was found guilty and on *March 11, 1949* he was, in accordance with the verdict of the jury, sentenced, still without counsel, to imprisonment for life. He appealed, as stated.

(e) The circumstances with respect to Bland's trial without counsel are set forth in the Trial Judge's Qualifications of Bland's Bill of Exception No. 1 on appeal. I quote:

"Qualification to Defendant's Bill of Exception No. 1.

"The record shows that the defendant was served with a certified copy of the indictment before the time of trial. No complaint was ever made to me about the defendant not having a copy of the indictment. As soon as the Grand Jury indicted the defendant, that is the same day, I had the defendant brought to the courtroom and informed him that he had been indicted, and that his case was set for trial and the date of that, and the nature of the charge against him. I then asked him if he had counsel and he informed me that he would have an attorney at the time of the trial. I told him then if he wanted any witnesses to give me a list of the same and I would have process issued for them.

"The defendant never at any time asked me to appoint counsel for him. When his case was called for trial I asked him then if he had counsel and he informed me that he did not but that he thought that in a week or ten days or more that his wife would secure counsel for him. I then informed him that it would be too late as court would be over in two weeks. He then said he would defend himself. I called him to the bench out of the hearing of the jury panel and asked him if it was true that he had paid some bondsmen in Oklahoma City to make his bond, and he replied that he paid them $500.00 to make his bond. That $500.00 was paid out after the commission of the offense for which he was tried in this county, and knowing that he would be brought back here for trial. He never at any time requested that I appoint counsel for him."

1. Counsel for the State of Texas in their brief contend that the decision of the Supreme Court in Chandler v. Fretag is bottomed on a Tennessee statute, Williams' Code, § 11863.1 et seq., providing that all persons charged with an offense are entitled to counsel, and that Texas has no such statute, etc. They also contend that in the absence of such a statute, whether State or United States, a person charged with an offense does not have an "unqualified right" to counsel. I think that neither

of whether Petitioner would have been entitled to the appointment of counsel, his right to be heard through his own counsel was unqualified. See Palko v. State of Connecticut, 302 U.S. 319, 324–325, 58 S.Ct. 149, 151, 82 L.Ed. 288."

contention is meritorious. The answer to both contentions is found in the following language of the Supreme Court in Powell v. State of Alabama, 287 U.S. 69, 53 S.Ct. 64 quoted with approval in Chandler v. Fretag. I quote:

"'If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.'"

To this the Court, in Chandler v. Fretag, adds this:

"A necessary corollary is that a defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth. Avery v. State of Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377; House v. Mayo, 324 U.S. 42, 46, 65 S.Ct. 517, 520, 89 L.Ed. 739; White v. Ragen, 324 U.S. 760, 764, 65 S.Ct. 978, 980, 89 L.Ed. 1348; Hawk v. Olson, 326 U.S. 271, 277–278, 66 S.Ct. 116, 119–120, 90 L.Ed. 61. By denying petitioner any opportunity whatever to obtain counsel on the habitual criminal accusation, the trial court deprived him of due process of law as guaranteed by the Fourteenth Amendment."

Here Bland was indicted *March 1, 1949,* and when brought before the Court the same day he informed the trial judge that he would have his own counsel at his trial. His trial was set for *March 8, 1949.* He was not able to secure counsel in one week, and when his case was called *March 8, 1949,* he asked for "a week or ten days" postponement to enable him to obtain counsel. I do not think he was given "a reasonable opportunity to employ and consult with counsel"—a right to which he was clearly entitled under the Constitution.

2. The opinion in Chandler v. Fretag shows that Chandler, who petitioned for the writ of habeas corpus, was "a middle-aged negro of little education". This record is not very clear as to Bland's status, but the statement of facts and proceedings of his trial do not indicate that he had any knowledge of or skill in defending himself. Besides, as clearly stated in the opinion in Powell v. State of Alabama, supra, the protection of the law is not limited to those who are ignorant or have little education.[3]

From what has been said it follows that Bland is entitled to, and he is awarded the writ of habeas corpus and those who have him in custody are required to show cause before the Court on a date and in the manner set forth in the order to be entered, why he should not be released from custody.

Let appropriate order be drawn and presented.

3. I quote from the opinion in Powell v. State of Alabama, and approved in Chandler v. Fretag:

"'What, then, does a hearing include? Historically and in practice, in our country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right. The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect.'"