**UNITED STATES ex rel. Billy Lee GLENN, Petitioner-Appellant,**

v.

**Frank J. PATE, Warden, et al., Respondent-Appellee.**

**No. 16751.**

United States Court of Appeals Seventh Circuit.

Jan. 15, 1969.

Billy Lee Glenn, pro se.

William G. Clark, Atty. Gen. of Illinois, Chicago, Ill., John J. O'Toole, John J. George, Asst. Attys. Gen., of counsel, for appellee.

Before CASTLE, Chief Judge, MAJOR, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

MAJOR, Senior Circuit Judge.

The petition in this proceeding for writ of habeas corpus was dismissed December 20, 1967, by the District

Court for the Northern District of Illinois, without a hearing. From this order of dismissal petitioner appeals.

Petitioner was charged by indictment in the County of Rock Island, Illinois, with the offense of "unlawful use of weapons," in violation of Sec. 24–1(a)(4), Chap. 38, Ill.Rev.Stats., 1961. The offense charged carried a penalty of a fine not to exceed $500.00, or imprisonment in a penal institution other than the penitentiary not to exceed one year, or both. He was tried by a jury and found guilty. After the jury verdict, the State invoked the Illinois Habitual Criminal Act (Chap. 38—Criminal Law and Procedure, Sec. 603.1 et seq.)[1], and the Court imposed a sentence of not less than one or more than ten years in the Illinois State Penitentiary, where petitioner is now confined.

Petitioner in numerous courts and proceedings has challenged the legality of his commitment, including an appeal to the Illinois Supreme Court, which affirmed the judgment against him. People v. Glenn, 35 Ill.2d 483, 221 N.E.2d 241. We need not review such proceedings because no question is raised here but that he exhausted his State Court remedies. Neither is there any jurisdictional question.

Petitioner makes two contentions, which succinctly stated are: (1) that the Habitual Criminal Act was not applicable, and (2) in any event, that it was applied in such a manner as to deprive petitioner of due process under the Fourteenth Amendment.

The first issue is based primarily on the argument that petitioner was indicted and convicted of a misdemeanor and the Court was without authority to impose sentence on a felony charge. This argument involves an interpretation of the Habitual Criminal Act, which provides that an offense punishable only as a misdemeanor may be punishable as a felony if the defendant has been previously convicted of a felony. We need not labor this point because it involves an interpretation or construction of the Illinois Act and has been determined adversely to petitioner's contention by the Illinois Supreme Court. See People v. Glenn, supra, and People v. Ostrand, 35 Ill.2d 520, 221 N.E.2d 499.

A more serious issue emerges from petitioner's contention that he was denied due process at the proceeding when the Court imposed sentence. Petitioner alleges with reference to that proceeding that he and his counsel were brought before the Court at the time the verdict of the jury was returned, and immediately and without previous notice to petitioner, the State offered into the evidence records of two former convictions, which the Court admitted. Petitioner's counsel announced that he was not prepared for a hearing on that phase of the matter and requested a continuance. The Court abruptly denied the request and imposed sentence.

Petitioner in connection with his petition sets forth what purports to be a portion of the transcript of the proceeding which took place at the time sentence was imposed:

> "The Court: Let the record show that the jury has returned a verdict finding the defendant, Billy Lee Glenn, guilty of Unlawful Use of Weapons in manner and form as charged in the indictment."

Mr. Denger (for the State) read Section 603.3 of Chapter 38 of the Illinois Revised Statutes, subsequently quoted. Thereupon, the record of the former convictions was admitted, with the following colloquy:

> "The Court: All right, he is so informed.
>
> Mr. Denger: Will you also have the girl type up just a written notice to the court to be filed at this time, that we

---

1. On brief in this Court the respondent states that "the procedure utilized for assessing the increased sentence [provided for by Section 24–1(b) of the Illinois Criminal Code of 1961] was pursuant to the provisions of the Illinois Habitual Criminal Act."

are going to present former convictions of Billy Lee Glenn in this case.

Mr. Wurbs [for the defendant]: Why don't we set a date sometime after this jury is done?

The Court: We are not going to set a date. We are going to dispose of it now.

The Court: I take it this has been served on the defendant here in open court?

Mr. Stengel: Yes.

The Court: All right, proceed.

Mr. Wurbs: Your Honor, would you let the record show that the defendant has at this time been presented with the notice of hearing of the circuit court of Rock Island County, that it wishes to present evidence of prior convictions, and that the defendant and the attorney for the defendant has not been notified at any time prior that such a hearing would take place, and that defendant's attorney has not had time in which to prepare a defense for this hearing.

The Court: What time is required for a hearing of this sort?

Mr. Wurbs: I didn't even know the procedure, Your Honor. In my own opinion I don't believe the proceeding from the Habitual Criminal Act applies to the case in hand.

The Court: Well, now do you have any record of any such conviction?

Mr. Denger: Yes, Your Honor, we have.

The Court: Do you want to offer it?

The Court: Any evidence in mitigation?

Mr. Wurbs: No evidence at this time, Your Honor.

The Court: What do you mean 'at this time?'

Mr. Wurbs: There is no way I can get his employer down here, the people he worked with, no one other than this sister here. I came down here prepared only for the jury to render their verdict, not for a hearing * * *."

Section 603.3 of the Habitual Criminal Act provides, so far as material:

"After a plea or verdict or finding of guilty and before sentence is imposed, * * * the prosecutor may file with the court a written statement concerning any former conviction of a felony rendered against the defendant. The court then shall cause the defendant to be brought before it; shall inform him of the allegations of the statement so filed, and of his right to a hearing before the court on the issue of such former conviction of a felony and of his right to counsel at such hearing; and unless the defendant admits such conviction, the court shall hear and determine such issue, and shall make a written finding thereon."

Thus, it appears from the allegations of the petition, together with the transcript of the trial court proceedings, that the increased sentence was imposed upon petitioner at a hearing of which he had no advance notice. Even the Court did not recognize that the State was proceeding under the Habitual Criminal Act, and the State itself was doubtful on that score; in fact, a high state of confusion permeated the proceeding. This was recognized by the Illinois Supreme Court, which stated (221 N.E.2d 244):

"It is apparent that there was initial confusion in the trial court as to whether the presentence hearing was one under the Habitual Criminal Act or not. As the hearing progressed, however, we think it became clear to all concerned that the proceeding was a hearing under the Habitual Criminal Act, and defendant's contention to the contrary cannot be sustained."

The State argues, "Upon scrutiny of the Statute it is apparent that no procedural requirements are imposed. The act merely states that the prosecution 'may' file with the court a written statement concerning any former conviction of a felony. It should be noted that in the case at bar 'oral' notice was given

by the People that they intended to introduce evidence of prior convictions, and that a written statement to this effect was served on the defendant shortly thereafter."

We think this argument is without merit. As we read the Statute, it definitely imposes procedural requirements. True, the prosecutor "may" file with the Court a written statement concerning any former conviction, depending on whether he desires to proceed under the Habitual Criminal Act. It is only when he elects to so proceed that such statement must be filed, and it is only then that the Court is authorized to cause a defendant to be brought before it to "inform him of the allegations of the statement so filed and of his right to a hearing before the Court on the issue of such former conviction." Evidently the purpose of the statement is to inform the defendant in advance of the State's intention to invoke the Habitual Criminal Act, based on prior convictions. An oral statement given to the defendant either before or during the hearing is not in compliance with the Statute, and neither is a written statement given during the hearing, as was done in this case.

The State places great reliance upon the decision of the Illinois Supreme Court affirming petitioner's conviction. It states, "The Illinois Supreme Court is a highly competent and respected tribunal, and its decision should not be disturbed unless it is obvious that it was arbitrary and violative of the defendant's constitutional rights." Of course, we heartily agree with this characterization of the Illinois Supreme Court; however, its decision is not controlling here, in view of the decisions of the Supreme Court of the United States.

As was stated in Townsend v. Sain, Sheriff et al., 372 U.S. 293, 318, 83 S.Ct. 745, 760, 9 L.Ed.2d 770:

"Although the district judge may, where the state court has reliably found the relevant facts, defer to the state court's findings of fact, he may not defer to its findings of law. It is the district judge's duty to apply the applicable federal law to the state court fact findings independently."

In Oyler v. Boles, Warden, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446, the latest of a series of cases, the Court had before it the issue as to whether the defendants had been deprived of due process in connection with their sentences under the Habitual Criminal Act of West Virginia. The Court stated (page 452, 82 S.Ct. at page 504):

"* * * a defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge * * *. Such requirements are implicit within our decisions in Chewning v. Cunningham [368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442]; Reynolds v. Cochran, 365 U.S. 525, 81 S.Ct. 723, 5 L.Ed.2d 754 (1961); and Chandler v. Fretag, supra [348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4]."

In Reynolds v. Cochran, 365 U.S. 525, 81 S.Ct. 723, 5 L.Ed.2d 754, on facts quite similar to those alleged here, the Court held that the defendant, sentenced under an Habitual Criminal Act, had been deprived of due process where the Court refused a continuance in order that his counsel might have time to prepare for a hearing.

In Chewning v. Cunningham, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442, the Court reached the same result in a situation where the defendant was convicted under the Habitual Criminal Act of Virginia without the aid of counsel. Referring to the *Reynolds* case, the Court stated (page 446, 82 S.Ct. page 500):

"In Reynolds v. Cochran, supra, the accused had his own lawyer and only asked for a continuance. But the holding in the case applies equally to an accused faced with an information under Virginia's recidivist statute and who has no lawyer."

In Chandler v. Warden Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4, the Court

had before it a situation in which a Tennessee Circuit Court had denied the prisoner his release on a writ of habeas corpus from a life sentence as an habitual criminal. The denial was affirmed by the Supreme Court of that State. At his trial, the prisoner was advised orally for the first time that because of three prior convictions for felonies he would be tried also as an habitual criminal and, if convicted, would be sentenced to life imprisonment. His request for a continuance to enable him to obtain counsel on the habitual criminal accusation was denied, and he was forced to stand trial immediately and without counsel. The Supreme Court of the United States in reversing the judgment of the Tennessee Supreme Court stated (page 10):

"By denying petitioner any opportunity whatever to obtain counsel on the habitual criminal accusation, the trial court deprived him of due process of law as guaranteed by the Fourteenth Amendment."

In view of these decisions of the Supreme Court of the United States, we think the conclusion is inescapable that the sentence by which petitioner is now committed was imposed in violation of his constitutional rights under the Fourteenth Amendment. Ordinarily we would remand the case for a determination of the factual situation, but we see no point in so doing as the State in its response to the Court's order to show cause and in its brief in this Court takes no issue with the facts alleged by petitioner. Instead, it relies, as we have shown, upon the provision of the Illinois Statute and the decision of the Illinois Supreme Court in People v. Glenn, 35 Ill.2d 483, 221 N.E.2d 241. In our judgment, such reliance is misplaced and affords no justification for the sentence by which petitioner is detained.

The order appealed from is reversed and the cause remanded, with directions that petitioner be discharged unless the State proceeds promptly to seek his resentence, after proper notice and hearing, in conformity with the views expressed in this opinion.