Greenville NOBLE, Petitioner-Appellant,

v.

Harold BLACK, Superintendent, Kentucky
State Reformatory,
Respondent-Appellee.

No. 75–1761.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 12, 1976.

Decided July 23, 1976.

Rehearing and Rehearing En Banc
Denied Sept. 15, 1976.

Jack Emory Farley, J. Vincent Aprile, II, Frankfort, Ky., for petitioner-appellant.

Greenville Noble, pro se.

Edward W. Hancock, Atty. Gen. of Ky., William W. Pollard, Frankfort, Ky., for respondent-appellee.

Before EDWARDS, CELEBREZZE, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

Greenville Noble was indicted in the Circuit Court of Elliott County, Kentucky, for

first degree murder, and was convicted by a jury on May 8, 1973. He was sentenced to life imprisonment on May 15, 1973, and on May 18, 1973, he appealed his conviction and sentence to the Kentucky Court of Appeals, which affirmed the conviction and sentence on February 15, 1974. Six months thereafter, on August 15, 1974, he petitioned the United States District Court for the Eastern District of Kentucky for a writ of habeas corpus, which was dismissed by the District Judge on May 7, 1975.

There is no dispute as to the facts of defendant's conviction, which may be summarized as follows:

Appellant and his wife, Betty, separated. He took their baby boy away with him, and she could not find out where the baby was. After about a month, appellant came to the door of the house where his wife was living, and he asked her if she was coming back to him, and she said she was not. He then asked her why she was taking birth control pills, and she replied that she had not taken any since the ones she had been taking since she and appellant had parted. When he asked her again whether she was coming back to him and she replied that she was not, appellant took a pistol out of his pocket and while her back was turned from him, as she was sitting forward in a chair, he shot her in the back. She suddenly bowed over, and appellant shot her again lower down in the back. He then turned and walked through the door out of the kitchen. His wife called for her mother and said she was going to die, and her grandmother and her mother told her to trust in the Lord. When Betty's friend, Diane, went to the telephone to call for an ambulance, Betty said: "There ain't no use, Diane, I am dying anyway." Betty then said she was smothering as she lay on the floor, and that she could hardly get her breath. She died shortly thereafter. Without extenuating circumstances, this was a cold-blooded murder of a defenseless woman—a murder of a wife by her husband.

However, appellant claims that he committed the killing while he was insane. Although he was indicted for murder on Feb-ruary 7, 1973, and the case was set for trial for May 8 of the same year, it was three months after he was indicted and the day before the trial was to commence, that appellant, by his counsel, first moved the trial court for a continuance in order to obtain a psychiatric examination in preparation for a defense of insanity. The only evidence presented in support of appellant's motion for a continuance was his own testimony, and the affidavit of his counsel. Appellant's testimony upon which his motion for continuance, in order to obtain a psychiatric examination, was as follows:

(By counsel for appellant)

"Q. Greenville, I have made a motion for a continuance in this action to a later date and, would you tell the court that this motion has been made at your request? Would you tell the court why you want additional time?

A. Because the doctor told me to see a psychiatrist.

Q. What doctor is this?

A. Barber, at Morehead.

Q. When did you see Dr. Barber?

A. About a week ago I guess.

Q. Had you seen Dr. Barber before?

A. Yes, two or three times before.

\* \* \* \* \* \*

Q. For what reason did you go to see Dr. Barber?

A. Because of my headaches. My head had been hurting.

Q. When did Dr. Barber say you needed to see a psychiatrist?

A. The last time I seen him.

Q. He hadn't told you to see one before that?

A. No.

Q. Do you know the reason why he hadn't or didn't?

A. Because I didn't tell him what had happened.

Q. In other words, you didn't give him a complete history before this last visit?

A. No.

Q. And why?

> A. I didn't—I just didn't know him.
> Q. Did it take two or three visits to where you could get to tell him about it?
> A. About three times."

The fact that appellant had been indicted for murder nearly three months before any of his visits to Dr. Barber makes it difficult to believe he did not tell the doctor about the indictment at the time he had called him after the indictment was returned.

The affidavit of appellant's counsel filed in support of the motion for continuance states:

> "After the arraignment of the defendant I had a conference with him and because of his action at the arraignment and later, a general discussion was had in regard to a psychiatric examination. I recommended that he see a doctor for the purpose of getting a referral to a psychiatrist if the medical doctor thought it necessary.
>
> "The defendant has seen Dr. George E. Barber, Morehead, Kentucky, 'two or three times' since then. After the first consultation with Dr. Barber, I saw the defendant and the defendant stated that the doctor did not say anything about an examination.
>
> "At a consultation with the defendant on the 2nd day of May, 1973, I discovered that the defendant had not discussed the matter with Dr. Barber until an office visit on May 1, 1973.
>
> "According to the defendant, Dr. Barber has told him that under the circumstances, the defendant should consult a psychiatrist.
>
> "The continuance should be granted in order to give the defendant an opportunity to have an examination by a psychiatrist and the Motion is not being made for purpose of delay.
>
> "WHEREFORE, I respectfully request that this Court grant a continuance of the trial so that the defendant, Greenville Noble, might have an opportunity for a psychiatric examination."

When appellant first went to see Dr. Barber, he gave him some pills and took X rays.

Dr. Barber told him the results of the X rays, as appellant testified, and the doctor "said something about muscles in my neck, and bones growed upon them or something," and that the pain in his head was a tension headache. When Dr. Barber learned about appellant killing his wife, he told him to see his lawyer "and do something about it." The week before the case was set for trial was the first time appellant told his lawyer that the doctor had said he should see his lawyer and have him "do something about it."

The only other matter before the trial court on the hearing of the motion for a continuance was the affidavit of counsel for appellant which has already been quoted. The testimony of the appellant on the hearing for a continuance and the affidavit of his counsel are not sufficient grounds upon which to reverse the trial court's order overruling the motion for a continuance. At the time, the trial court added to his denial of the motion that "if, any time something should happen, the court can stop the trial and order an examination. At this time I don't feel that it is warranted and your Motion for continuance is overruled."

Appellant was a dangerous man. He admitted during the course of his trial that he always carried a gun, that he slept with a gun most of the time and that he kept a gun with him at all times. He also admitted he was not afraid of anybody, that he didn't know that he had ever been threatened. He was a jealous man. His wife had been taking birth control pills when they were living together, after the birth of their baby boy. Appellant claimed to have found out that she was still taking the pills after they separated, and she told him that she was doing so to "keep my periods straight." He had seen her, before he killed her, "with one of the boys she used to go with."

As counsel for the government stated in his brief:

> "In the case at bar the only information with which the trial judge was con-

fronted bearing upon [appellant's] competence to stand trial was the affidavit of his counsel to the effect that [appellant's] physician had suggested consultation with a psychiatrist and the demeanor of Mr. Noble during the course of the hearing held upon his motion for a continuance *and throughout the remainder of his trial.* The transcript of the continuance hearing at which [appellant] was the only witness indicates that he was alert and lucid and that his responses to questions propounded to him were relevant, coherent, and appropriate. * * * There was no evidence presented of a history of mental illness suffered by [appellant]." (Emphasis supplied.)

We find the foregoing an accurate statement of the facts therein contained.

█ The trial court's denial of appellant's motion for a continuance did not result in the denial to him of any of his rights to due process. Counsel for the government aptly cites *Ungar v. Sarafit,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921.

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. *Avery v. Alabama,* 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. *Chandler v. Fretag,* 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. *Nilva v. United States,* 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415; *Torres v. United States,* 270 F.2d 252 (C.A. 9th Cir.); cf. *United States v. Arlen,* 252 F.2d 491 (C.A. 2d Cir.)"

Counsel further pointed out that ninety days elapsed between appellant's indictment and his trial, and that it was not until a third visit to his physician that he informed the doctor that he was under indictment for murder, and that his physician then advised him to consult a psychiatrist. It is probable that any physician treating a man for tension headaches, upon learning that he had killed his wife, would advise consultation with a psychiatrist. The trial court, as already mentioned, at the conclusion of his order denying appellant's motion for a continuance, said that if anything should later arise to indicate a continuance was warranted, it could stop the trial and order a psychiatric examination.

At the conclusion of his trial, appellant was found guilty of murder by the verdict of the jury, and sentence of life imprisonment was thereafter imposed by the trial court.

On appeal, the Court of Appeals of Kentucky affirmed the judgment of conviction. It further held that there was no abuse of discretion on the part of the trial court in denying appellant's motion for continuance; that his motion was made the day before trial and no satisfactory reason was presented as to why he could not have obtained the psychiatric examination during the three-month period between indictment and trial. The Court of Appeals further held:

"Appellant's contention that the court should have postponed the trial on its own motion because appellant did not have sufficient mental capacity to stand trial cannot be sustained. The fact that appellant suffered chronic headaches and had a headache on the morning of the trial; that he slept with a gun; and that he was uncertain of whether he fully understood the seriousness of the charge against him were not sufficient indications of insanity to require a postponement of trial under RCr 8.06. The trial record viewed as a whole shows no reasonable grounds for believing appellant unable to participate in the preparation of his defense.

"The judgment is affirmed."

Subsequent to the affirmance and nearly five months thereafter, the District Judge recited in his Memorandum Opinion:

"(A)n affidavit was prepared by the petitioner's physician noting that he was of the opinion that the petitioner needed psychiatric treatment and was incompetent at the time of trial. This matter has never been presented to the Kentucky courts."

The District Judge, in passing upon appellant's petition for a writ of habeas corpus, held that the only question before him was "whether the state trial court was presented with sufficient evidence so as to require the invocation of R.Cr. 8.06" which provides that a hearing on the issue of insanity or incompetency to stand trial need only be held where there are reasonable grounds to believe that the defendant is insane or incompetent to stand trial. The District Judge continued: "The trial court's decision not to grant the continuance or conduct a competency hearing did not amount to constitutional error."

Appellant's counsel argues that the trial court's determination not to grant a motion for a continuance or conduct a competency hearing amounted to constitutional error. In this instance, the only information presented in support of the motion, as above recited, was the petitioner's testimony as to his recurring headaches and the assertion that he was advised to consult a psychiatrist. Ninety days elapsed between appellant's indictment and trial. In this regard, it was only after appellant's conviction had been affirmed by the Kentucky Court of Appeals that appellant's doctor, George C. Barber, M.D., stated that he suspected appellant was a psychotic and recommended that appellant should consult a psychiatrist. The question before us is whether appellant's claim created a reasonable doubt as to his competence to require further inquiry as to his mental responsibility for the killing of his wife.

Appellant relies, in his contention, upon *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815. In that case appellant was convicted of murdering his common-law wife. It was conceded at trial that he had shot and killed her, but counsel claimed that appellant was insane at the time of the incident, and also not competent to stand trial. It was uncontradicted that appellant had a long history of disturbed behavior, had been confined as a psychopathic patient, and had committed acts of violence including the killing of his infant son and an attempted suicide. Four witnesses testified that the respondent was insane. The trial court declined rebuttal medical testimony as to appellant's sanity, deeming sufficient a stipulation that a doctor would testify that when appellant was examined a few months before trial he knew the nature of the charges and could cooperate with counsel.

The United States Supreme Court held that the evidence raised a sufficient doubt as to appellant's competence to stand trial so that he was deprived of due process of law under the Fourteenth Amendment by the trial court's failure to afford him a hearing on that issue; and that, in view of evidence raising a doubt on the competence issue, the court was required to impanel a jury and conduct a sanity hearing, and could not rely in lieu thereof on appellant's demeanor at trial or on the stipulated medical testimony. The evidence in *Pate, supra,* showing murder of appellant's common-law wife, his long period of disturbed behavior, his prior confinement as a psychopathic patient, his killing of his little son, his attempted suicide, and the testimony of four witnesses that he was insane, was greatly in excess of that in the instant case, as to competence to stand trial.

Counsel also relied upon *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 as authority for reversal of the judgment in the instant case on appellant's competence to stand trial.

In the *Drope* case, appellant was indicted, with two others, for rape of appellant's wife. Prior to trial, a psychiatrist had examined appellant at the request of defense counsel, and had suggested psychiatric treatment for appellant. A motion that

appellant be further examined and receive psychiatric treatment was denied. On the trial, appellant's wife testified and confirmed appellant's "strange behavior," and stated that she had changed her mind about not wanting to prosecute appellant because he had tried to kill her on the Sunday before the trial; and on the second day of the trial appellant shot himself in a suicidal attempt, but, despite his absence from the trial, the court denied a motion for a mistrial on the ground that his absence was voluntary. Appellant's conviction was affirmed, 498 S.W.2d 838. The Supreme Court reversed the judgment of conviction and remanded the case for further proceedings; and, in its opinion, determined that the Missouri court failed to accord proper weight to the evidence suggesting appellant's incompetence. The Supreme Court held that, when considered with the evidence prior to trial and the testimony of appellant's wife at the trial, the information concerning petitioner's suicidal attempt created a sufficient doubt of his competence to stand trial to require further inquiry. The Court said:

"Notwithstanding the difficulty of making evaluations of the kind required in these circumstances, we conclude that the record reveals a failure to give proper weight to the information suggesting incompetence which came to light during trial. This is particularly so when viewed in the context of the events surrounding petitioner's suicide attempt and against the background of the pretrial showing. Although a defendant's demeanor during trial may be such as to obviate 'the need for extensive reliance on psychiatric prediction concerning his capabilities, * * *' we concluded in *Pate v. Robinson* * * * that 'this reasoning offers no justification for ignoring the uncontradicted testimony of . . . [a] history of pronounced irrational behavior.' * * * Too little weight was given to the testimony of petitioner's wife that on the Sunday prior to trial he tried to choke her to death. For a man whose fate depended in large measure on the indulgence of his wife, who had hesitated

about pressing the prosecution, this hardly could be regarded as rational conduct."

The Court went on to say that in considering the indicia of petitioner's incompetence separately, the state courts gave insufficient attention to the aggregate of those indicia in applying the standard of the statutes of Missouri. The Supreme Court declared that it did not address itself to the Court of Appeals conclusion that an attempt to commit suicide does not create reasonable doubt of competence to stand trial as a matter of law. The Supreme Court concluded, on this aspect of the case, that when considered with the information available prior to trial and the testimony of petitioner's wife at trial, the information concerning petitioner's suicide attempt created a sufficient doubt of his competence to stand trial to require further inquiry on the question.

In conclusion, the Supreme Court declared:

"The question remains whether petitioner's due process rights would be adequately protected by remanding the case now for a psychiatric examination aimed at establishing whether petitioner was in fact competent to stand trial in 1969. Given the inherent difficulties of such a *nunc pro tunc* determination under the most favorable circumstances * * *, we cannot conclude that such a procedure would be adequate here. * * * The State is free to retry petitioner, assuming, of course, that at the time of such trial he is competent to be tried.

"The judgment is reversed, and the cause is remanded for proceedings not inconsistent with this opinion."

Under the circumstances in the instant case, the abduction of the baby boy from the mother by appellant, his dangerous habit of carrying a loaded pistol with him at all times, even taking it to bed with him each night, although no one had ever threatened him, his demand on his separated wife to return to him and, upon her refusal, his killing her by shooting her twice in the back while she was sitting with her

mother, his coolly walking away from the scene of the crime, with no effort to hide himself, or escape, his claim of suffering torturing headaches, his doctor's advice to see a psychiatrist—all of these circumstances created a sufficient doubt as to appellant's competence requiring further inquiry as to his mental responsibility for the killing of his wife, and these should have been inquired into, as hereinafter shown, at whatever stage of the proceedings such evidence was sought to be introduced and became available, even after verdict and judgment, as bearing upon appellant's competency and sanity.

The District Court concluded that it lacked jurisdiction under 28 U.S.C. Sec. 2254 to consider the question as to whether the defendant, in fact, lacked the competence to stand trial, and that that question had never been raised under the provisions of R.Cr. 11.42 before the state trial and appellate courts; that such an effort would not be fruitless, since as said in *Matthews v. Commonwealth,* 468 S.W.2d 313, a Kentucky case:

> "When the circumstances do not require a determination of sanity under RCr 8.06 and the question of competency to stand trial arises after the trial, a defendant is entitled, at most, to a hearing in which he has an opportunity to establish that at the time he lacked mental capacity to understand the nature of the proceedings against him or to rationally participate in his defense. The burden rests with the defendant. The appellant was granted such an evidentiary hearing on his motion to vacate. * * *." P. 314

The foregoing permits a collateral attack upon the conviction based upon mental incompetence at the time of trial. The government concludes its brief by stating, with regard to the foregoing authority: "Consequently, any effort to present this claim by way of a motion pursuant to R.Cr. 1142 *would not be fruitless since this viable remedy remains. Terry v. Wingo,* 454 F.2d 694 (C.A. 6)." (Emphasis supplied.)

The judgment of the District Court denying the petition for a writ of habeas corpus is affirmed with reservation to petitioner of his right to file a petition in the trial court for a plenary hearing to vacate the sentence on proof of his mental incompetence at the time the alleged offense was committed; and, if necessary, with counsel to be appointed on his behalf in such proceeding. See *Patterson v. Hampton,* 355 F.2d 470 (1966) (C.A. 10), *Finan v. Crouse,* 352 F.2d 507 (1965) (C.A. 10), *Arsenault v. Gavin,* 248 F.2d 777 (C.A. 1), *Strowder v. Shovlin,* 380 F.2d 370 (1967) (C.A. 3), *Brizendine v. Swenson,* 261 F.Supp. 68 (1966) (D.C.Mo.), *Jones v. Davis,* 233 F.Supp. 949 (1964) (W.D. Ky.), *United States ex rel. Schuster v. Herold,* 410 F.2d 1071 (1969) (C.A. 2).