Filed 2/26/21  P. v. Franklin CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>GERALD TODD FRANKLIN,<br><br>        Defendant and Appellant. | C090900<br><br>(Super. Ct. No. 18FE014798) |

A jury found defendant Gerald Todd Franklin guilty of unlawful possession of a firearm, assault with a firearm, and mayhem after defendant pointed a shotgun at a man and shot off the back of his hand when the man pushed the gun away.  Defendant appeals, contending the trial court abused its discretion when it denied his motion for a continuance to obtain new counsel.  We conclude the trial court did not abuse its discretion and affirm the judgment.

1

## FACTS AND PROCEDURAL HISTORY

No discussion of the facts underlying the offense is necessary to the issues raised by defendant on appeal. Instead, we summarize the relevant procedural history.

In October 2018, the prosecution charged defendant with assault with a firearm (Pen. Code, § 245, subd. (a)(2); statutory section references that follow are to the Penal Code, unless otherwise set forth) and unlawful possession of a firearm as a felon (§ 29805). The information further alleged defendant personally used a firearm in the commission of the offense (§ 12022.5, subds. (a), (d)) and personally inflicted great bodily injury (§ 12022.7, subd. (a)). At the preliminary hearing, the trial court found that the People had presented sufficient evidence to also bring a charge of mayhem (§ 203), with the allegations that defendant personally used a firearm (§ 12022.53, subd. (b)) and intentionally discharged the firearm causing great bodily injury (§ 12022.53, subds. (c), (d)), in the event they decided to bring the additional charge.

At a hearing more than three months later, the prosecutor said that consistent with his recent discussions with defense counsel, he intended to add the mayhem charge and related allegations. That same month, defendant made his first motion for substitute counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), stating he was dissatisfied with her lack of attentiveness to his case. Finding no sufficient basis for the motion, the court denied it.

Five months thereafter, in July 2019, unhappy with defense counsel's purported lack of communication and bothered by her perceived relationship with the district attorney, defendant made a second *Marsden* motion. During the hearing, defendant said his counsel had apprised him that he would be charged with mayhem, which "carries a 25-to-life sentence." He emphasized that his "life [was] on the line." Defense counsel responded she had "talked ad nauseam about mayhem" with defendant, and confirmed

she had promptly conveyed every change in the prosecution's position to defendant.  The trial court found defendant's complaints were unfounded and denied the motion.

Defense counsel then stated that she might ask that the trial date be continued, over defendant's objection, if she had not obtained medical records prior to trial.  The hearing concluded after the prosecutor confirmed he would file an amended information adding the mayhem charge and allegations, as the parties had been unable to reach a plea deal.  The prosecution amended the information nearly two weeks later, increasing defendant's exposure from a maximum of 18 years to a maximum of life in prison.

Six weeks after the amendments to the complaint, on September 24, 2019, the case proceeded to trial.  During voir dire, defendant told the court that he wished to represent himself.  He conceded that he was unprepared to proceed with trial if the court granted his motion to represent himself and agreed he was making the motion so that he could get a continuance to consider other options.  He requested a 90-day continuance to prepare his case for trial and "seek[] co-counsel" to assist him.  The court construed his request as a motion for self-representation under *Faretta v. California* (1975) 422 U.S. 806 [42 L.Ed.2d 562] (*Faretta*) and denied it as untimely.

Later that day, concerned it had issued its ruling without sufficient inquiry, the court revisited the *Faretta* motion.  The court asked defendant why he had waited until the day of trial to make his motion, to which defendant said he was "just not satisfied with the direction of [his] defense."  Defendant explained that he sought a continuance to represent himself while finding co-counsel, which he said his newly-employed wife could now afford.  The court attempted to clarify, asking, "you really are seeking to represent yourself in order to get a continuance; is that correct?"  Defendant responded, "so to speak."

After further inquiry, during which defendant expressed his continued frustration with his attorney, the court concluded that defendant's dissatisfaction with his counsel's performance was at the heart of his complaint, which necessitated further exploration.

3

Defendant agreed, so the court construed defendant's request as a *Marsden* motion and held a hearing. At the hearing, defendant stated, "I am fighting a life case and [my counsel] and I have countless disagreements in the direction of my defense." He complained that she had tried to persuade him to take a plea deal to avoid the mayhem charge, and that she expected to lose the case. After further discussion, the court asked if defendant's "first choice" was to replace his counsel and whether his wife was trying to hire an attorney, to which he responded "yes" without further elaboration. The court then denied the *Marsden* motion, finding defendant's counsel was providing him with adequate representation and pursuing the very defense he requested.

The court then denied defendant's *Faretta* motion as "equivocal" and "really not a *Faretta* motion," but rather "really kind of a *Marsden* motion." The court explained that it believed defendant "really would like to be represented by counsel," but that the request was an untimely and tactical attempt to delay trial without good cause, particularly in view of defendant's previous objections to continuances.

The case proceeded to trial with defendant's appointed counsel. The jury found defendant guilty on all counts and allegations but did not find that he intentionally discharged a firearm. The court deemed assault with a firearm the principal term and sentenced defendant to the midterm of three years, plus a consecutive three-year sentence for the great bodily injury enhancement and a consecutive 10-year sentence on the firearm enhancement, for an aggregate sentence of 16 years. The court imposed and stayed an aggregate 14-year sentence for mayhem, comprised of the midterm of four years plus a consecutive 10-year firearm enhancement. The court also imposed a concurrent two-year sentence for unlawful possession of a firearm as a felon.

4

*I*

*Defendant's Request for Continuance*

Defendant argues the trial court abused its discretion in denying his request for a continuance at the start of trial to allow him to obtain new counsel. He contends he was entitled to a continuance to retain counsel because the People filed an amended information less than 60 days before trial, which increased his exposure from 18 years to life. Further, he contends that all witnesses were local, the jury had not yet been selected, and the trial court did not find that a continuance would have been a significant inconvenience. Finally, he asserts the trial court failed to reference the applicable law when articulating its decision.

While the People counter that defendant's request is most accurately viewed as a continuance to represent himself rather than retain counsel, which the trial court properly denied, defendant does not contend that the trial court erred in denying either his *Marsden* motion or *Faretta* motion. Thus, although it appears that defendant's request was primarily in the nature of *Marsden* and *Faretta* motions, we address defendant's true contention on appeal, that is, whether the trial court committed reversible error when it failed to grant a continuance for defendant to hire an attorney. We find no abuse of discretion.

Under both the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution, a criminal defendant has a right to the assistance of counsel. (See *Strickland v. Washington* (1984) 466 U.S. 668, 684-685 [80 L.Ed.2d 674]; *People v. Pope* (1979) 23 Cal.3d 412, 422.) "[D]ue process of law, as it is expressed through the right-to-counsel provisions of the state and federal Constitutions, comprehends a right to appear and defend with retained counsel of one's own choice." (*People v. Byoune* (1966) 65 Cal.2d 345, 346 (*Byoune*).) Limitations on

5

this right are "carefully circumscribed. Thus, the right 'can constitutionally be forced to yield *only* when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.' [Citations.]" (*People v. Courts* (1985) 37 Cal.3d 784, 790 (*Courts*).)

A necessary corollary of the right to retain counsel is that " 'a defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth. [Citations.]' [Citations.] In addition, counsel, 'once retained, [must be] given a reasonable time in which to prepare the defense.' [Citation.]" (*Courts, supra,* 37 Cal.3d at p. 790.)

A trial court's denial of a request for a continuance to seek private counsel is reviewed under an abuse of discretion standard. (*People v. Pigage* (2003) 112 Cal.App.4th 1359, 1367.) "A continuance may be denied if the accused is 'unjustifiably dilatory' in obtaining counsel, or 'if he arbitrarily chooses to substitute counsel at the time of trial.' [Citation.]" (*Courts, supra,* 37 Cal.3d at pp. 790-791.) "In deciding whether the denial of a continuance was so arbitrary as to violate due process, the reviewing court looks to the circumstances of each case, ' "particularly in the reasons presented to the trial judge at the time the request [was] denied." ' [Citation.]" (*Id.* at p. 791.) The trial court is generally "within its discretion to deny a last-minute motion for continuance to secure new counsel." (*People v. Keshishian* (2008) 162 Cal.App.4th 425, 429.) " '[O]nly an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.' " (*People v. Alexander* (2010) 49 Cal.4th 846, 934-935.) Additionally, where the prospect of retaining counsel is "still quite speculative at the time the motion for continuance [i]s made" the court has even greater latitude to deny the requested continuance. (*Courts,* at p. 791, fn. 3.)

The record in this case supports the trial court's determination that defendant's request was unjustifiably dilatory. Contrary to defendant's contention on appeal,

6

defendant's stated reason for the continuance was not the amended information. Rather, defendant moved for a continuance based on largely rehashed complaints about his counsel's performance and perceived motivations, consistent with his two prior *Marsden* motions. When asked, defendant was unable to explain to the trial court why he waited until voir dire to move for a continuance, and at no time did defendant cite the amended information, or his increased exposure, as grounds for the request. Indeed, several months prior to trial and aware of the impending mayhem charges, defendant had opposed his own counsel's request for a trial continuance. Thus, the court was within its discretion to deny the request as inexcusably delayed.

Further, the defendant's prospect of retaining counsel at the time of the motion for continuance was wholly speculative. While he asserted that he had the financial means to acquire counsel now that his wife worked, he did not explain when those means arose or describe any concrete steps he had taken to retain counsel. Thus, it was mere speculation that defendant would be ready to begin trial in 90 days. Under these circumstances, the trial court was not required to accommodate what might turn out to be an open-ended request for continuance to allow defendant to arrange for private representation. (See, e.g., *People v. Murphy* (1973) 35 Cal.App.3d 905, 915-916 [no abuse of discretion denying continuance before trial where there was no assurance the defendant's desired attorney would accept his case]; *People v. Johnson* (1970) 5 Cal.App.3d 851, 858-859 [no abuse of discretion denying continuance before trial where it was unclear that defendant had ever contacted his desired counsel].)

Defendant relies on *Byoune, supra,* 65 Cal.2d 345 and *Chandler v. Fretag* (1954) 348 U.S. 3 [99 L.Ed. 4], arguing the trial court erred by failing to acknowledge either case as the relevant authority for defendant's motion. However, those cases are distinguishable and thus not dispositive here. In both *Chandler* and *Byoune*, the courts concluded that trial courts violated defendants' right to counsel when they denied motions to continue trial to retain counsel, where the defendants learned of their

7

increased charges immediately before trial and promptly requested a continuance to retain counsel in light of their increased exposure. (*Byoune,* at pp. 346-348; *Chandler,* at pp. 4-8.) Here, unlike in *Chandler* and *Byoune*, defendant was apprised of the likelihood of a mayhem charge at the preliminary hearing, nearly a year before trial. Approximately three months before trial, defendant explained his awareness of the looming mayhem charge to the court, noting it would convert his case to a life case. The information itself was amended a month and a half before trial. As a result, defendant was not surprised with new charges on the eve of trial. And, as discussed above, defendant did not seek new counsel because of his increased exposure in the amended information.

*II*

*Sentencing Error*

Though not raised by the parties, we note that the trial court erroneously deemed count 1, assault with a firearm, the principle term. In cases where double punishment is prohibited, the defendant "shall be punished under the provision that provides for the longest potential term of imprisonment." (§ 654, subd. (a).) Enhancements are counted when comparing potential terms of imprisonment. (See People v. Kramer (2002) 29 Cal.4th 720, 723-725.) Here, the longest potential term for mayhem (§ 204, eight years) plus the firearm enhancement (§ 12022.53, subd. (b), 10 years) is 18 years, while the longest potential term for assault with a firearm (§ 245, subd. (a)(2), four years), plus the firearm enhancement (§ 12022.5, subd (a), 10 years) and great bodily injury enhancement (§ 12022.7, subd. (a), three years) is 17 years. Thus, the court should have stayed the sentence for assault with a firearm and deemed mayhem the principle term.

We will remand the case for resentencing. On remand, the trial court has discretion to increase or decrease the sentence. (See *People v. Serrato* (1973) 9 Cal.3d 753, 764 [no prohibition on imposition of more severe sentence after reversal of unauthorized sentence], disapproved on other grounds in *People v. Fosselman* (1983)

8

33 Cal.3d 572, 583, fn. 1; *People v. Hester* (2000) 22 Cal.4th 290, 295 [sentence imposed in violation of § 654 is unauthorized].)

DISPOSITION

The stayed 14-year sentence on the mayhem conviction and the 16-year concurrent sentence on the assault with a firearm conviction are reversed, and the matter is remanded for resentencing.  The judgment is otherwise affirmed.


_____
HULL, Acting P. J.


We concur:


_____
MAURO, J.


_____
MURRAY, J.