**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**John G. BENNETT, Jr., and The Foundation for New Era Philanthropy, Defendants.**

Civ. A. No. 95–3005.

United States District Court, E.D. Pennsylvania.

Nov. 16, 1995.

David S. Horowitz, S.E.C., Philadelphia, PA, Richard H. Walker, Jacqueline Abramson Zucker, Ellen N. Hersch, Petra T. Tasheff and Alexander M. Vasilescu, S.E.C., New York City, for Plaintiff.

**436**

Gregory Miller, Miller, Alfano & Raspanti, PC, Daniel Jonas, Odell Guyton and Gino J. Benedetti, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Defendant, John G. Bennett, Jr. has filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) or, in the alternative, for a more definite statement.[1] In support of his request for dismissal, Bennett contends that plaintiff, the Securities and Exchange Commission ("SEC"), cannot sustain its allegations that defendants violated the Securities Act of 1933, 15 U.S.C. § 77a et seq., and the Securities Exchange Act of 1934, 15 U.S.C. § 78b et seq., because the instruments of indebtedness in question were not, and were not alleged to be, "securities" within the meaning of those laws.

The SEC alleges that Bennett and Foundation for New Era Philanthropy ("New Era") raised hundreds of millions of dollars from nonprofit institutions and individuals through the fraudulent offer and sale of unregistered securities. (Complaint at ¶ 6.) In 1995 alone, Bennett and New Era allegedly offered and sold over $100 million in unregistered securities to several hundred nonprofit entities and to individuals who wished to provide funds to such entities. (Complaint at ¶¶ 7, 9.) They guaranteed that the investors' money would be doubled in six months by matching grants from anonymous benefactors. (Complaint at ¶ 8.) In reality, there were no anonymous benefactors. (Complaint at ¶ 25.) Bennett and New Era promised that during the six months that the investors' funds remained with New Era, they would be kept in custodial escrow or quasi-escrow accounts, invested solely in conservative government instruments, and the interest would be used for New Era's operating expenses. (Complaint at ¶¶ 8, 22.) The SEC alleges that, in reality, escrow or quasi-escrow accounts were not created. The investors'

funds were allegedly commingled in a brokerage account, and some of them were transferred to other entities controlled by Bennett. (Complaint at ¶¶ 26, 27.) Some of the funds were invested in treasury bills, but these, in turn, were used as security for a loan of almost $45 million to New Era. (Complaint at ¶ 27.) The scheme came to light when New Era filed a petition for bankruptcy on May 15, 1995.[2] (Complaint at ¶ 10.)

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). In deciding whether to grant the motion, I must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. Philadelphia,* 868 F.2d 644, 645 (3d Cir. 1989). The issue in a 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but rather whether the plaintiff would be entitled to relief under any set of facts consistent with the claims set forth in the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). While a question may exist as to whether the instruments will ultimately qualify as securities under the securities laws, I am unable to say at this point that this very stringent test has been met, therefore I will allow the case to go forward and the parties to conduct discovery.

After discovery has been completed, Bennett may again raise the issue whether these instruments are securities within the meaning of the federal securities laws. If he does so, I would like the parties to address "the economic realities of the transaction" as discussed in *International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 558, 99

**1.** Because Bennett's co-defendant, the Foundation for New Era Philanthropy, has filed for bankruptcy, this action is stayed against it, and the case now proceeds against Bennett only. 11 U.S.C. § 362; *Raymark Industries, Inc. v. Lai,* 973 F.2d 1125, 1126 (3d Cir.1992).

**2.** Additional background information in this case appears in a previous memorandum opinion on my jurisdiction in connection with the SEC's petition for a preliminary injunction. *SEC v. Bennett,* 889 F.Supp. 804 (E.D.Pa.1995).

S.Ct. 790, 796, 58 L.Ed.2d 808 (quoting *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 851–52, 95 S.Ct. 2051, 2060–61, 44 L.Ed.2d 621 (1975)). Accord *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967); *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298, 66 S.Ct. 1100, 1102, 90 L.Ed. 1244 (1946). While I take no position on possible extensions of any decision in this case to other factual scenarios, I would also like the parties to address the question of how other fund-raising efforts of non-profit organizations, for example, other matching grant programs [3] or charitable gift annuities,[4] might be affected by a ruling in favor of the SEC. Furthermore, I would like to hear more on the possible impact on foundations that disperse charitable contributions to other charities of requiring them to register their instruments with the SEC.

■ In his motion to dismiss, Bennett contends in the alternative that the SEC should be required to submit a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) in the form of an amended complaint. He states that the SEC "has alluded to theories of potential liability that are not set forth in its Complaint, [and] these theories are so vague and ambiguous that he cannot frame a responsive pleading." (Defendant's Motion at ¶ 15.) The defects in the complaint to which Bennett alludes are not obvious. He does not have to respond to allusions to theories of potential liability in the complaint, only to the factual allegations. Because Bennett has not complied with Rule 12(e), which requires him to "point out the defects complained of and the details desired," he has not made clear the substance of his objections I will deny motion for a more definite statement.

**3.** The New York Times of November 16, 1995, reported that Amherst College had been promised $25 million by an anonymous donor, contingent on its securing matching donations. A spokesman for the college was confident that the matching funds would be found. He said, "In the fund-raising business, it's called leverage. You can then go to donors and tell them their gifts are worth twice the dollar amount." N.Y. Times, Nov. 16, 1995, at A18.

*ORDER*

AND NOW, this 16th day of November, upon consideration of the motion of defendant, John Bennett, to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the response of the plaintiff, the Securities and Exchange Commission, and the memoranda of the parties in support of their respective positions, it is hereby **ORDERED** that the motion is **DENIED**, and a conference shall be held to set the time limits and scope of discovery as provided in the accompanying order of this date.

**4.** A charitable gift annuity is a contractual agreement by a charity to pay a fixed sum at least annually to an annuitant for life in exchange for a transfer of property to the charity. The promise to pay the annuity is backed by all of the assets of the issuing charity. Lizabeth A. Turner, *Charitable Gifts That Pay Fixed Income*, 39 La. B.J. 580 (1992); *see also* James W. Colliton, *Charitable Gifts* § 8.10 (2d ed. 1994).