**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

**v.**

**Blake A. PRATER and Wellspring Capital Group, Inc. Defendants.**

**No. CIV. 3:03CV1524(MRK).**

United States District Court, D. Connecticut.

Nov. 25, 2003.

---

Franklin C. Huntington, IV, Martin F. Healey, Scott D. Pomfret, U.S. Securities & Exchange Comm., Boston, MA, John B. Hughes, U.S. Attorney's Office–NH, New Haven, CT, for Plaintiff.

Blake A. Prater, Guilford, CT, Pro se.

John B. Kaiser, Stratford, CT, for Defendants.

### Memorandum of Decision

KRAVITZ, District Judge.

Currently pending before the Court are Defendants' Motion to Dismiss Complaint, or in the Alternative, Motion to Severely Modify Preliminary Injunction ("Motion to Dismiss") [doc. # 28], filed October 14, 2003, and Defendants' Motion for Immediate and Expedited Ruling [doc. # 41], filed November 25, 2003. For the reasons stated below, Defendants' Motion for Immediate and Expedited Ruling [doc. # 41] is GRANTED, and Defendants' Motion to Dismiss Complaint, or in the Alternative, Motion to Severely Modify Preliminary Injunction [doc. # 28] is DENIED.

## I.

Before turning to Defendants' Motion to Dismiss, it is appropriate to recite the events that have transpired in this case since the Court issued its Ruling On Motion for Preliminary Injunction, Order Freezing Assets and Order for Other Equitable Relief ("Preliminary Injunction Ruling") [doc. # 23] on September 26, 2003. In its Preliminary Injunction Ruling, the Court noted that Defendants had not yet "chosen to offer their side of the story" and therefore stated that if the Defendants "believe[d] that they [had] a proper basis for seeking to modify, vacate or dissolve the preliminary injunction and/or asset freeze" the Court would entertain such a motion and would be willing to do so on an expedited basis. Preliminary Injunction Ruling, at 25. In the same ruling, the Court *sua sponte* ordered the Securities and Exchange Commission ("SEC") to file monthly reports on the progress of its investigation and the status of frozen assets so that the Court could monitor the progress of the SEC's investigation and ensure that the case moved forward promptly to conclusion. The Court also required the SEC to submit by October 14, 2003 a timetable "for bringing this case to a prompt hearing on a permanent injunction" and ordered Defendants to respond to the SEC's proposed schedule within one week—that is, by October 21. *Id.*

On October 1, 2003, the Court held a telephonic status conference with counsel for the SEC and Joseph Cage, a Louisiana-based lawyer who purported to represent Defendants. [Doc. # 33]. At the time, the Court informed Mr. Cage that if he wanted to represent Defendants, he would need to associate with local counsel who would themselves need to file an appearance on Defendants' behalf and that he, Mr. Cage, would then need to be admitted *pro hac vice* by the Court. The Court instructed Mr. Cage promptly to

retain local counsel, file appearances, and seek admission *pro hac vice,* and it explained that until he did so, the Court could not accept pleadings Mr. Cage filed on Defendants' behalf. The Court also urged Mr. Cage to answer the SEC's complaint or move with respect to it as promptly as possible since Defendants were currently in default for failure to respond to the SEC's complaint. Mr. Cage agreed to retain local counsel, file appearances on Defendants' behalf, and respond to the complaint.

On October 14, 2003, the SEC filed its first status report [doc. # 30] describing its investigation to date and the assets frozen pursuant to the Court's Preliminary Injunction Ruling, approximately $3 million. The SEC also submitted a proposed timetable for bringing this case to a hearing on a permanent injunction, which called for discovery to be completed by May 14, 2004. On the same day, Mr. Cage filed the Motion to Dismiss [doc. # 28] on behalf of the Defendants. Contrary to the Court's instructions on October 1, 2003, at the time the Motion to Dismiss was filed Mr. Cage had not yet been admitted *pro hac vice,* Defendants had not yet retained local counsel, and no lawyer, Mr. Cage including, had filed an appearance on behalf of the Defendants. Nevertheless, the Clerk's Office docketed the Motion to Dismiss.

The Motion to Dismiss, which is essentially a 67 page brief, was not accompanied by a motion to file a brief in excess of 40 pages or a separate motion to dismiss, as is required by the Court's rules. *See* Local Rule 7(a)1, 7(a)2. The Motion to Dismiss also did not request expedited briefing or consideration. As a result, the SEC responded to the Motion to Dismiss in accordance with Local Rule 7 on November 4, 2003 [doc. # 36]. In addition to its brief, the SEC filed a Declaration from

Frank Huntington [doc. # 38] and a Fourth Declaration from Scott Pomfret [doc. # 37], along with additional documents that the SEC had discovered during the course of its investigation [doc. # 39].

On October 20, 2003, the Court issued a Ruling on Defendants' Petition for Writ of Habeas Corpus [doc. # 29], which denied a petition for a writ of habeas corpus that Defendant Prater had filed *pro se* on September 24, 2003 [doc. # 17]. The SEC had filed its response to the Petition on September 26, 2003 [doc. # 21] and Mr. Prater (not Mr. Cage) filed a reply in his own behalf on October 14, 2003 [doc. # 27].

On October 30, 2003, the Court held a second telephonic conference with counsel for the SEC and Mr. Cage, because the Court was concerned that no lawyer had yet appeared on behalf of the Defendants and that the Defendants had not responded to the SEC's proposed timetable as of October 21, as the Court had previously ordered. [doc. # 34]. During this conference, the Court was informed that John Kaiser, a Connecticut lawyer, would appear on behalf of Defendants and move Mr. Cage's admission *pro hac vice.* As required by the Court, Mr. Kaiser filed his appearance on behalf of all Defendants on October 31. Nonetheless, contrary to the court rules and the explicit instructions from the Court, no lawyer had appeared for Defendants until approximately two weeks *after* the Motion to Dismiss had been filed. Mr. Cage, whose signature appears on the Motion to Dismiss, did not even move to appear *pro hac vice* until November 18, 2003,[1] and he has still not been formally admitted to appear in this Court even though he has continued to file pleadings with the Court—namely, the Motion for Immediate and Expedited Ruling—in contravention of court rules and

the Court's instructions. Furthermore, even though the Court (at Defendants' request) extended Defendants' time to respond to the SEC's proposed timetable until November 14, Defendants failed to respond to the SEC's proposed timetable on the required date and have still not done so as of the date of this Ruling.

On November 14, 2003, the SEC filed its second status report [doc. # 40], in which the SEC stated, among other things, that it had noticed for November 6th a deposition of Defendant Wellspring Capital Group ("Wellspring") under Rule 30(b)(6) of the Federal Rules of Civil Procedure but that at Defendants' request, the SEC had agreed to postpone the deposition to allow Mr. Kaiser to prepare to defend the deposition. The SEC report further detailed the SEC's efforts to investigate this matter and repeated its request for entry of a schedule in accordance with its proposed timetable, which the SEC stated it had faxed to Defendants' counsel on November 12.

In accordance with the Court's Local Rules, Defendants' reply to the SEC's brief in opposition to the Motion to Dismiss was due on November 18. Instead of filing a reply to the SEC's substantive argument, Mr. Cage filed on behalf of Defendants on November 21 a Motion for Immediate and Expedited Ruling, which the Court now grants despite the fact that it bears the signature of a lawyer who has not yet been admitted to this Court.

The Court includes the foregoing recitation because it shows that at all stages of this proceeding both this Court and the SEC have acted promptly and expeditiously to address the issues raised by this case; by contrast, Defendants and their counsel have repeatedly sought to delay critical

1. This is actually the date on which a courtesy copy of Mr. Cage's *pro hac vice* motion was received by this Court. The motion has still not been docketed by the Clerk and has therefore not yet been granted.

events in this case and have failed to respond or otherwise discharge their obligations in a timely and proper manner. Now that Defendants have retained counsel, who have at long last filed an appearance and a motion to appear *pro hac vice*, it is the Court's fervent hope and its expectation that Defendants will adhere to the requirements of the rules and will bring this case to an expeditious conclusion.

## II.

Defendants' Motion to Dismiss does not distinguish between Defendants' arguments for dismissal and their arguments for modification of the injunction. Nonetheless, the Court will consider the arguments for dismissal of the complaint and modification of the injunction separately.

## A.

On a motion to dismiss, a court must "accept as true all factual allegations in the complaint," and should not dismiss the complaint " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A court's "task in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Id.* (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984)).

Taking the SEC's allegations as true and drawing all reasonable inferences in its favor, as the Court must, it is clear that the SEC has asserted facts which, if proven, would entitle the Commission to the relief it seeks in this case. Those factual allegations were described in great detail in the Court's Ruling on Motion for Preliminary Injunction [doc. # 23] and will not be reprised here. Certainly, the Court cannot say, as it would be required to do in order to grant Defendants' motion, that it appears beyond doubt that the SEC can prove no set of facts in support of its claim that would entitle it to the relief it seeks. *See SEC v. KPMG LLP*, 2003 WL 21998052, *4–6 (S.D.N.Y. Aug. 25, 2003).

Defendants mount a series of legal challenges to the SEC's claims that Defendants violated Sections 5(a) and 5(c) of the Securities Act by selling and offering to sell securities without filing a registration statement. 15 U.S.C. §§ 77e(a), (c). Having considered each of Defendants' arguments, the Court concludes that none has merit.

Defendants chiefly argue that Wellspring's programs are "private contracts" and not "securities" and that the securities laws therefore do not apply to Defendants. Mot. to Dismiss, at 32–33. However, as explained in the Preliminary Injunction Ruling, at 17–18, "investment contracts" qualify as a "security" under the Securities Act of 1933, 15 U.S.C. § 77b (the "1933 Act"). The Supreme Court defines "investment contracts" as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). At least at this stage of the proceeding, and recognizing that substance governs over form in the determination of whether a particular investment vehicle constitutes a "security," the SEC has alleged sufficient facts to show that Defendants' investment programs satisfy the standard for "investment contracts." Complaint, ¶¶ 17–24. Furthermore, insofar as Defendants' products qualify as securities and are thus subject to the provisions of the 1933 Act, the SEC

has alleged (and Defendants have not disputed) that the securities in question were not properly registered under Sections 5(a) or 5(c). *Id.* ¶¶ 19, 32–35. These allegations—that Defendants violated Sections 5(a) and 5(c) by offering and selling unregistered securities—are sufficient, in and of themselves, to state a claim of violation of the securities laws. *SEC v. Spence & Green Chem. Co.,* 612 F.2d 896, 901–02 (5th Cir.1980).

■ The SEC has also claimed that Defendants have violated the sections of the Securities Act and Exchange Act of 1934 (the "1934 Act") prohibiting fraudulent or deceptive conduct in the offer and sale of securities. 15 U.S.C. § 77q(a), 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b–5. *See* Complaint ¶¶ 36–41. Defendants allege that the SEC has not proved the element of scienter, whose history Defendants discuss at length. Mot. to Dismiss, at 12–15. The Second Circuit has held that "a plaintiff in a fraud action may plead scienter by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Chill v. GE,* 101 F.3d 263, 268 (2d Cir.1996) (internal quotations omitted). The SEC has asserted that Defendants made promises of exorbitant returns on investment that they either knew, or were reckless in not knowing, were impossible legitimately to fulfill. *See* Complaint ¶¶ 37, 40. The allegations of the SEC's Complaint, which the Court must accept as true at this stage of the proceeding, are more than sufficient to satisfy the Second Circuit's requirements for scienter.[2] *Novak v. Kasaks,* 216 F.3d 300, 311–12 (2d Cir.2000); *Cromer Finance Ltd. v. Berger,* 137 F.Supp.2d 452, 469 (S.D.N.Y.2001). Indeed, as explained in the Preliminary Injunction Ruling, if the SEC's allegations

are true, Defendants appear to have engaged in a classic pyramid or Ponzi scheme. *See, e.g., SEC v. John G. Bennett, Jr.,* 904 F.Supp. 435, 436 (E.D.Pa. 1995).

■ Defendants also fail to take into account that the securities laws apply differently to the SEC than they do to a private plaintiff, because Congress designated the SEC as "the primary enforcement agency for the securities laws." *SEC v. Rana Research,* 8 F.3d 1358, 1364 (9th Cir.1993). Thus, contrary to Defendants' arguments in their Motion to Dismiss, the SEC is not required to allege or prove that investors relied on Defendants' misrepresentations, *e.g., SEC v. N. Am. Research & Dev. Corp.,* 424 F.2d 63, 84 (2d Cir.1970), or that specific investors suffered actual harm as a result of Defendants' misrepresentations. *E.g., Graham v. SEC,* 222 F.3d 994, 1001 (D.C.Cir.2000).

Curiously, Defendants' include in their brief a fourteen-page exegesis on the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u–4. *See* Mot. to Dismiss, at 15–28. However, as Defendants themselves appear to recognize, "[T]he Reform Act affects all aspects of *private litigation* under the Federal Securities Laws." *Id.* at 16 (emphasis added). Since actions brought by the SEC are not considered "private litigation," the standard imposed in the PSLRA for pleading scienter does not apply to the SEC. 15 U.S.C. § 78u–4(a)(1) ("The provisions of this subsection shall apply in each private action arising under this title that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."); *see also SEC v. Guenthner,* 212 F.R.D. 531, 532 (D.Neb.2003); *SEC v. ICN*

**2.** In fact, Plaintiffs do not even need to make a showing of scienter to prove a violation of Sections 17(a)(2) and 17(a)(3) of the 1934 Act. *See Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980) ("It is our view, in sum, that the language of § 17(a) requires scienter under § 17(a)(1), but not under § 17(a)(2) or § 17(a)(3).").

*Pharms., Inc.*, 84 F.Supp.2d 1097, 1099 (C.D.Cal.2000); *SEC v. Blackman*, 2000 WL 868770, *5 (M.D.Tenn. May 26, 2000).

Accordingly, this Court concludes that the SEC has asserted factual allegations sufficient to state a claim for relief under the securities laws and therefore, Defendants' Motion to Dismiss is denied. In accordance with Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure, Defendants will file their answer to the SEC's Complaint within 10 days of this Ruling.

### B.

■ Defendants also ask this Court to "severely modify" the preliminary injunction issued on September 26, 2003. Under Section 20(b) of the 1933 Act, courts can grant a preliminary injunction in an SEC enforcement action upon a "proper showing" of securities law violations. 15 U.S.C. § 77t(b). The Second Circuit has stated that this "proper showing" requires the SEC to demonstrate both a *prima facie* case of past violations, *SEC v. Unifund SAL*, 910 F.2d 1028, 1037 (2nd Cir.1990), and a reasonable likelihood or propensity to engage in future violations. *SEC v. Cavanagh*, 155 F.3d 129, 132 (2nd Cir. 1998); *SEC v. Commonwealth Chem. Sec.*, 574 F.2d 90, 99 (2nd Cir.1978). Among the factors a District Court may consider in exercising its wide discretion to determine whether an injunction is proper are: (1) the likelihood of future violations; (2) the degree of scienter involved; (3) the sincerity of defendant's assurances against future violations; (4) the isolated or recurrent nature of the infraction; (5) defendant's recognition of the wrongful nature of his conduct; and (6) the likelihood, because of defendant's professional occupation, that future violations might occur. *SEC v. Universal Major Indus. Corp.*, 546 F.2d 1044, 1048 (2nd Cir.1976); *SEC v. Manor Nursing Ctrs.*, 458 F.2d 1082, 1100 (2nd Cir.1972). In its Preliminary Injunction Ruling, this Court described at length its reasons for finding that a "proper showing" had been made, and will not repeat that analysis here.

Notably, Defendants have submitted no affidavits or documentary evidence in support of their motion; nor do they request an evidentiary hearing at which they would submit testimony in support of their motion. Instead, Defendants seek to convince the Court to severely modify the injunction previously entered by pointing to alleged deficiencies in the proof submitted by the SEC in support of its request for injunctive and equitable relief. In effect, Defendants seek to alter the existing status quo by lifting the injunction or releasing the assets that have been frozen under the Court's order. Yet, inexplicably, Defendants have not submitted any evidence or documentary evidence in support of their request.

■ Though a party can seek modification of an existing injunction under Federal Rule of Civil Procedure 60(b)(5), the moving party bears the burden of "showing that continuation of the injunction would be inequitable." *New York State Ass'n for Retarded Children v. Carey*, 706 F.2d 956, 967 (2d Cir.1983). Though the exact standard the movant must meet has not been precisely defined, *see* 11A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 2961, at 395 (1995), it is clear that the movant must make a showing regarding two elements: that "the danger which the decree was meant to foreclose must almost have disappeared," *and* that the movant faces "extreme and unexpected" hardship. *See Humble Oil & Ref. Co. v. American Oil Co.*, 405 F.2d 803, 813 (8th Cir.1969); *U.S. v. Swift & Co.*, 189 F.Supp. 885, 905 (N.D.Ill.1960). While Defendants have made allegations of hardship, (unaccompanied, however, by any proof), they have made no factual showing suggesting that the facts the Court relied

upon in granting the injunction were incorrect or have changed, or that the harm the SEC sought to prevent in requesting the injunction has disappeared.

■ In particular, Defendants still have not put forward any evidence addressing the main issue in this action—namely, how they could legitimately have made good on their promises of such exorbitant returns to investors. Defendants blithely state in their motion that "returns exceeding 300%, 500%, 1000% or more are regularly made in businesses everyday, in every city and state in the country and indeed the world." Mot. to Dismiss, at 32. Even if that statement were true (and the Court is skeptical of that assertion in the absence of any evidentiary proof), Defendants still have not explained to the Court *how* they proposed to produce those kinds of outsized returns given the businesses in which they had invested. Though Defendants challenge a number of the SEC's factual claims, ultimately they provide no alternative to the SEC's explanation of how Defendants would pay out such enormous returns—which is that early investors would be paid from the proceeds obtained from later investors, the very definition of a "pyramid scheme." The failure to speak to the allegation at the heart of the SEC's fraud charge leaves the Court with no basis on which to modify the injunction.

Defendants complain about the negative inference the Court drew from Mr. Prater's invocation of the Fifth Amendment, arguing that he never actually asserted his Fifth Amendment privilege. *See* Mot. to Dismiss, at 46. However, it is beyond question that at the time the SEC was seeking to take the deposition of Mr. Prater in support of its preliminary injunction motion, Mr. Prater's then-lawyer, William Dow, represented to the SEC that Mr. Prater would invoke the Fifth Amendment if he were deposed, and Mr. Dow requested that the deposition not be held. Supp.

Decl. of Scott Pomfret [doc. # 13], Ex. 1. The SEC postponed the deposition on the basis of that representation.

The Court is perplexed by the argument that if a party is scheduled for a deposition before a preliminary injunction hearing, represents that he will invoke his Fifth Amendment rights, and asks that the deposition be cancelled on that basis, the party can then claim that he never actually did invoke his Fifth Amendment rights, and thereby avoid all negative inferences that would arise from that invocation. If Mr. Prater no longer wishes to invoke the Fifth Amendment and now desires freely to testify about his businesses and how he proposed to produce the promised returns, that is his prerogative, and he can exercise that right either by submitting affidavits to the Court or appearing at a deposition or hearing. At that point, any negative inferences from his refusal to testify would fall away and the Court would evaluate his testimony and explanations on their own merits. However, at this point it is clear that Mr. Prater has not made that choice since he submitted no affidavit in support of his motion to modify the injunction and did not request an evidentiary hearing at which he would present testimony. Therefore, Defendants have not advanced any proper reason why this Court should reconsider its decision to draw negative inferences against Defendants.

■ More generally, Defendants assert that this Court "has allowed and adopted procedures that significantly favor the Plaintiff." Mot. to Dismiss, at 10. These "procedures" apparently are the Court's consideration of the undisputed facts regarding Mr. Prater's criminal record in connection with its ruling on the preliminary injunction, *id.* at 62, and an alleged violation of Defendants' constitutional right to counsel at the hearing on the

preliminary injunction. *Id.* at 9. Defendants' assertions have no merit.

First, the Court notes that one of the issues the Court was required to decide at the preliminary injunction stage was whether Mr. Prater made a "material misrepresentation or a material omission as to which he had a duty to speak," in connection with the purchase or sale of securities. *SEC v. Monarch Funding Corp.,* 192 F.3d 295, 308 (2d Cir.1999). The Supreme Court has determined that "[s]tatements or omissions are material if a reasonable investor would consider them important in the total mix of information available." *Basic Inc. v. Levinson,* 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). As the Court explained in its Preliminary Injunction Ruling, the fact that Mr. Prater has been convicted of fraud is information the reasonable investor would consider to be important when deciding whether to entrust money to Mr. Prater. Additionally, courts have held that "the commission of past illegal conduct is highly suggestive of the likelihood of future violations," *SEC v. Mgmt. Dynamics, Inc.,* 515 F.2d 801, 807 (2d Cir.1975), and while Mr. Prater's previous convictions for fraud do not prove that he is committing fraud now, they certainly are a factor the Court needs to take into account when evaluating whether future violations of the securities laws are likely. In both of these contexts, taking judicial notice of the undisputed facts regarding Mr. Prater's criminal history does not constitute "selective prosecution."

Second, as to the alleged denial of Defendants' constitutional right to counsel,

Defendants themselves acknowledge that they have no right to counsel in the non-criminal context. Mot. to Dismiss, at 9 ("Defendant's unqualified right to be heard through counsel of his choice, recognized in *Chandler v. Fretag,* 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4, was found not to apply to a party in an administrative investigation."). Though this is not an administrative investigation, the fact remains that the right to counsel inheres only in proceedings that threaten Defendant with actual imprisonment. *Scott v. Illinois,* 440 U.S. 367, 373–74, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). Furthermore, neither the SEC nor this Court has denied Defendants their right to counsel, as it is clear that "a defendant is not entitled to foot his legal bill with funds that are tainted by his fraud." *SEC v. Coates,* 1994 WL 455558, at *3 (S.D.N.Y. Aug. 23, 1994). Finally, the record of the proceedings regarding the preliminary injunction, including the transcript of that hearing, utterly refute any suggestion that this Court has adopted procedures that favor the SEC; to the contrary, the record in this case shows that the Court has bent over backwards to allow Defendants to present their case and has, at least until now, accommodated numerous violations of the Court's rules and instructions by Defendants and their counsel.[3]

■ Defendants also attack the Court's freeze order. The Second Circuit has established that in considering whether to unfreeze assets frozen in securities fraud proceedings, "the disadvantages and possible deleterious effect of a freeze must be

---

3. Defendants also make a series of claims about alleged improper conduct by the SEC and the Department of Justice. *See, e.g.,* Mot. to Dismiss, at 61–66. As the Department of Justice is not a party to this case, this Court is not the correct forum for asserting any claims against it. If Defendants believe that the SEC is engaging in improper conduct in connection with this action, they can assert that claim, but must do so by submitting evidence to that effect, not just rhetoric, and requesting appropriate relief. Defendants have failed to explain how a modification of an injunction that is designed to protect investors and the public from Defendants' securities violations and fraud is appropriate relief for any misconduct they allege against the SEC.

weighed against the considerations indicating the need for such relief." *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1106 (2d Cir.1972). Defendants have asserted that the freeze has had a deleterious effect for the many Wellspring investors whom they claim have "lost" funds paid into the Defendants. The Court remains sympathetic to those who had been relying on Defendants to pay their bills or otherwise make good on their promises. However, as noted in the Preliminary Injunction Ruling, the Court is satisfied that if it were to allow certain investors to be paid funds now, other investors would lose out. Defendants have not demonstrated that they have any means of paying all the investors who have given them money, and unless and until Defendants provide this Court with proof of a viable alternative that both protects investors and husbands available resources for eventual return to the investors if the SEC should prevail, the Court will not lift its freeze order.

As a final matter, the Court also notes that in their November 14 status report, the SEC has provided further evidence of misstatements made to investors by Mr. Prater and Wellspring. Pl.'s Opp'n to Def.'s Mot. to Dismiss [doc. # 36] at 13–17. For example, in a May 17, 2003 communication to investors on the DealMakerClub website, Prater stated that "the Wellspring Capital Group family of companies (DEALs, PRP, CarDEALs, SpringPay, Althouse Capital, MpactFunds, et al.) has moved past the $50 million a year in revenues level." App. Of Exhibits to the Fourth Decl. Of Scott D. Pomfret, [doc. # 39], Ex. 6. The SEC has determined, based on the available bank records, that Defendants had actually raised less than $4 million from investors without any other source of revenue by the end of May 2003. Decl. of Frank C. Huntington, [doc. # 38], ¶ 3.a. On July 14, 2003, Mr. Prater stated, in another communication to investors, "We are currently at a $100 million a year

sales pace..." App. of Exhibits to the Fourth Decl. Of Scott D. Pomfret, [doc. # 39], Ex. 8. The SEC has found that Defendants raised less than $14.5 million from investors by the end of July, with no other sources of revenue. Wellspring and Mr. Prater also, on at least two occasions, indicated to investors that Wellspring had purchased various businesses which it had not in fact acquired. Fourth Decl. of Scott D. Pomfret, [doc. # 37], ¶ 7, 9. Mr. Prater also misrepresented how long Wellspring had been in operation, stating in an email to an investor that "Wellspring Capital Group Inc.... [is] a venture development/venture capital firm in operations for over 20 years." *Id.* ¶ 5. In reality, Wellspring first incorporated on March 20, 2003. App. of Exhibits to the Fourth Decl. of Scott D. Pomfret, [doc. # 39], Ex. 4.

Troublingly, the SEC also indicates that Defendants may have made misrepresentations to the Court as well. Defendants indicate that BankNorth only took action to close Defendants' accounts as a result of the SEC investigation, Mot. to Dismiss, at 45, when in fact the Bank closed the account on August 22, two full weeks before the SEC began their investigation of Defendants in early September. Fourth Decl. of Scott D. Pomfret, [doc. # 37], ¶ 15; App. of Exhibits to the Fourth Decl. Of Scott D. Pomfret, [doc. # 39], Ex. 16. Defendants assert that the purported Wellspring office in Tennessee is not in fact an office, but is the home of one of Wellspring's agents, Mot. to Dismiss at 49, when in fact it is listed as an office on a Wellspring office list. App. of Exhibits to the Fourth Decl. of Scott D. Pomfret, [doc. # 39], Ex. 16. Finally, Defendants assert that the financial statement discussed in the Ruling on Preliminary Injunction, Supp. Decl. of Scott D. Pomfret [doc. # 12], Ex. 3, is "nothing more than a prototype template" and that the figures in the document were "not factual and meant only to illustrate the general relationship

between various accounts within the accounting system." Mot. to Dismiss, at 50. The SEC has discovered, however, that this statement was faxed to a CPA in Watertown, New York in connection with the closing of the acquisition of Gaetano Transportation, and a message to that effect from Mr. Prater appears on the fax cover sheet. Fourth Decl. of Scott D. Pomfret, [doc. # 37], ¶ 17. This suggests that Defendants have either made misrepresentations to the Court or to those with whom Defendants have done business. None of these disturbing allegations have been denied or refuted by the Defendants.

In sum, the Court concludes that Defendants have failed to meet their burden of demonstrating that the preliminary injunction should be modified. When and if Defendants put forward an actual case with evidence and testimony, (not mere legal argument), detailing the legitimate means by which the returns promised investors are created and disproving the SEC's allegations of fraud, this Court will entertain it. Until then, Defendants' Motion to Severely Modify the Preliminary Injunction [doc. # 28] is DENIED.

### III.

Not having heard from Defendants in response to the SEC's proposed timetable, the Court hereby adopts, pursuant to Rule 16 of the Federal Rules of Civil Procedure and Rules 16 and 26 of the Local Rules of the District of Connecticut, the schedule proposed by the SEC, with some modifications. Contemporaneously with this Memorandum of Decision, the Court will issue a Scheduling Order setting forth the relevant dates for bringing this case to a prompt hearing on a permanent injunction.

IT IS SO ORDERED.