■ Lawrence Greenberg, Appellant, v Erica Greenberg, Respondent. [41 NYS3d 49]—

Appeal by the plaintiff from an order of the Supreme Court, Nassau County (Hope Schwartz Zimmerman, J.), entered September 10, 2015. The order, after a hearing, granted the defendant's motion to modify the parties' judgment of divorce,

entered February 15, 2012, inter alia, to award her sole legal custody of the parties' child, and denied the plaintiff's cross motion to modify the parties' judgment of divorce to, among other things, award him sole legal and physical custody of the parties' child.

Ordered that the order is affirmed, with costs.

The parties were married and had one child together. In December 2011, after the commencement of this action for a divorce and ancillary relief, the parties entered into a settlement agreement which provided that they would have joint legal custody of their child, and that the defendant (hereinafter the mother) would have sole physical custody of the child. The settlement agreement provided that the parties would each have final decision-making authority over different aspects of the child's life: the mother had final decision-making authority over medical care, dental care, and education, while the plaintiff (hereinafter the father) had final decision-making authority over extracurricular activities and religious education. Rider A of the settlement agreement set forth a visitation schedule for the father. The parties were divorced by a judgment entered February 15, 2012, which incorporated, but did not merge, the terms of the settlement agreement.

In July 2013, the mother moved to modify the judgment of divorce to award her sole legal custody of the child, and for modifications of the visitation schedule to reduce the father's overall parenting time with the child. The mother alleged that the child had medical conditions that required treatment and that the father had interfered with the child's medical care by disrupting the treatment provided by the child's doctors and by initiating new courses of treatment with different doctors that he had unilaterally selected in violation of the terms of the settlement agreement. The mother further contended that she and the father were unable to communicate effectively, and that the father had made baseless reports about her to Child Protective Services and had contacted the police on numerous occasions in the presence of the child alleging that she had deviated from the visitation schedule. The mother asserted that the child was adversely affected by the visitation schedule since it required numerous transitions between the mother and father each week, often requiring multiple transfers each day.

In response to the mother's motion, the father cross-moved to modify the judgment of divorce to award him sole legal and physical custody of the child, and for a new visitation schedule that would reduce the mother's overall parenting time.

The Supreme Court directed a forensic evaluation of the parties and the child, and appointed a forensic evaluator for that purpose. The forensic evaluator concluded that the child had been negatively affected by the parties' conflicts, by the numerous transitions necessitated by the parties' visitation schedule, and by the father's refusal to comply with the terms of the settlement agreement.

A hearing on the motion and cross motion was held beginning on June 1, 2015. Both the father and the mother were represented by counsel, and an attorney for the child was appointed to represent the child's interests. The mother testified on her own behalf on June 1, 2, 3 and 4, 2015, and the hearing was adjourned until June 30, 2015. On that date, the Supreme Court stated that the issues were "very narrow" and informed the parties that the hearing was "going to be finished this week." The mother's attorney informed the court that the father had already served subpoenas on eight of the child's current and former medical treatment providers, noting that at least two of those doctors, including the child's pediatrician, had discharged the child from their care after receiving the subpoenas. The father's attorney stated that these witnesses were necessary to show that the parties were unable to communicate with each other. The court precluded the father from calling those witnesses, finding that such evidence was cumulative since it was apparent that the parties' relationship was "toxic." After this ruling, the mother completed her testimony and the father began testifying.

The father testified that his understanding of the settlement agreement was that the parties had "joint custody" and that they "[were] to make decisions together on all medical, educational, religi[ous] and extracurricular [matters]." The father testified that it was his understanding that both he and the mother were permitted to take the child to doctors without any coordination with the other parent, and described at least one instance when he took the child to a new doctor without the mother's knowledge or consent. The father also testified that he had undertaken to have the child evaluated for special education services over the mother's express objection.

The next day, July 1, 2015, when the father was scheduled to continue his testimony, the father's attorney advised the Supreme Court that she wished to be relieved as counsel because the father was "not confident" in her, had requested that she engage in what she considered to be "unethical" behavior, and wanted her to be relieved. The father's attorney requested an adjournment of "at least 60 to 90 days" so that the father could retain a new attorney.

The Supreme Court was informed that the father's attorney was the third attorney that he had retained to represent him in this matter, and that his prior attorney had asked to be relieved. The court questioned the father about the situation and the father stated that he "would like to relieve [his attorney]." The court ultimately relieved the father's attorney, but denied his request for an adjournment, noting that the matter had been pending for approximately two years and that it would not stop the hearing for an additional 60 days while the father was "in the middle of [his] testimony." The father did not object to the court's ruling and proceeded to represent himself on that date. The matter was then adjourned for about three weeks, and when the hearing resumed, the father, who had not retained counsel during the intervening three-week adjournment, proceeded to represent himself for the remainder of the hearing.

In the order appealed from, the Supreme Court stated that throughout the hearing, the father's position was that "his judgment [was] vastly superior to the mother's [judgment]" and that "he has always been empowered to make medical and educational decisions for the child when the child [was] with him." The court concluded that the father was either unable or unwilling to understand the distinction between consultation and decision making, and that he had failed to follow the terms of the parties' settlement agreement.

The Supreme Court ultimately granted the mother's motion, awarding her sole legal custody of the child and sole decision-making authority over all aspects of the child's life. The court specifically directed that the mother "shall not consult with [the father] or solicit his opinion about any medical or educational issues concerning the child." However, the mother was directed to advise the father of all of her decisions concerning the child's health, education, and welfare. The court specifically prohibited the father from taking the child to any physician or medical provider "except in the case of an emergency requiring medical attention at a hospital emergency room." The court modified the parenting schedule set forth in Rider A of the settlement agreement so as to reduce the father's parenting time with the child. The court denied the father's cross motion for sole legal and physical custody of the child.

The father appeals, contending that the Supreme Court erred in awarding the mother sole legal custody with sole decision-making authority and in reducing his visitation. The father further contends that the court erred in precluding him from calling the subpoenaed medical providers and in denying his request for an adjournment to substitute his retained counsel.

Modification of a court-approved stipulation setting forth terms of custody or visitation is permissible only upon a showing that there has been a change in circumstances such that a modification is necessary to ensure the best interests and welfare of the child (*see Hughes v Hughes*, 131 AD3d 1207, 1208 [2015]; *Anonymous 2011-1 v Anonymous 2011-2*, 102 AD3d 640, 641 [2013]; *Matter of Dorsa v Dorsa*, 90 AD3d 1046, 1046 [2011]; *Matter of Gaudette v Gaudette*, 262 AD2d 804, 805 [1999]). "In determining the child's best interests, the court must look to the totality of the circumstances" (*Alvarez v Alvarez*, 114 AD3d 889, 891 [2014]; *see Eschbach v Eschbach*, 56 NY2d 167, 174 [1982]).

Here, the record demonstrates that there had been a change in circumstances such that a modification of the existing custody arrangement was necessary in order to ensure the continued best interests of the child. The parties' deteriorating relationship and the father's persistent refusal to follow the terms of the settlement agreement negatively affected the child's well-being and the mother's ability to provide the child with treatment for his medical conditions. Contrary to the father's contention, the record contained ample evidence to support the Supreme Court's conclusion that the parties could not effectively co-parent and that awarding sole legal custody to the mother with full decision-making authority was in the best interests of the child (*see Eschbach v Eschbach*, 56 NY2d at 174; *Alvarez v Alvarez*, 114 AD3d at 891). Furthermore, the record establishes that there had been a change in circumstances such that a modification of the existing visitation arrangement was necessary in order to ensure the continued best interests and welfare of the child (*see Matter of Rodriguez-Donaghy v Donaghy*, 138 AD3d 1123, 1124 [2016]; *Matter of Zwillman v Kull*, 90 AD3d 774, 775 [2011]). The court's determination modifying the terms of the existing custody and visitation agreement has a sound and substantial basis in the record, and there is no basis to disturb it (*see Matter of Rodriguez-Donaghy v Donaghy*, 138 AD3d at 1124).

The father's contention that the Supreme Court committed reversible error when it precluded him from presenting the testimony of approximately eight of the child's current and former medical treatment providers is without merit. "Whether evidence should be excluded as cumulative is a matter that rests within the sound discretion of the trial court" (*Rosabella v Fanelli*, 225 AD2d 1007, 1008 [1996]; *see Bergamaschi v Gargano*, 293 AD2d 695, 696 [2002]). Here, the father sought to present the testimony of these medical providers on the sole

ground that such testimony would demonstrate that the parties were unable to communicate effectively with each other. In light of, among other things, the fact that both parties repeatedly acknowledged that there had been a breakdown in communication between them—indeed, this was one of the primary grounds cited by the mother in support of her motion—the court did not improvidently exercise its discretion in precluding the father from calling the medical providers to testify for that purpose (*see Matter of Anthony M.*, 63 NY2d 270, 283 [1984]; *cf. Bergamaschi v Gargano*, 293 AD2d at 696). To the extent that the father contends that the testimony of these witnesses was relevant for some other purpose, the father's contentions in this regard, raised for the first time on appeal, are not properly before this Court (*see Lemoine v Steinway Fitness Group, LLC*, 106 AD3d 960, 960 [2013]).

The father's contention that the Supreme Court improvidently exercised its discretion in denying his application for a 60- to 90-day adjournment to retain a different attorney is without merit. Section 262 (a) (v) of the Family Court Act confers the right to the assistance of counsel upon "the parent of any child seeking custody or contesting the substantial infringement of his or her right to custody of such child, in any proceeding before the court in which the court has jurisdiction to determine such custody." Such a parent has the right to be represented by counsel of his or her own choosing and must be accorded a reasonable opportunity to select and retain his or her counsel (*see Matter of Savoca v Bellofatto*, 104 AD3d 695, 697 [2013]; *see also People v Milord*, 115 AD3d 774, 774 [2014]; *see generally Chandler v Fretag*, 348 US 3, 9-10 [1954]). "The right to be represented by counsel of [one's] own choosing is, however, not unlimited" (*People v Milord*, 115 AD3d at 774). Indeed "this right is qualified in the sense that a [party] may not employ such right as a means to delay judicial proceedings" (*People v Arroyave*, 49 NY2d 264, 271 [1980]; *see People v Milord*, 115 AD3d at 774). "[A]bsent exigent or compelling circumstances, a court may, in the exercise of its discretion, deny a [party's] request to substitute counsel made on the eve of or during trial if the [party] has been accorded a reasonable opportunity to retain counsel of his [or her] own choosing before that time" (*People v Arroyave*, 49 NY2d at 271; *see People v Crown*, 51 AD2d 588, 589 [1976]).

Here, the father's request for an adjournment occurred almost two years after the mother sought to modify the settlement agreement. The father's request for a 60- to 90-day adjournment was made at the beginning of the sixth day of the

hearing and after the Supreme Court had indicated that no further adjournments would be granted. Notably, the father's request for an adjournment occurred after the mother had completed her testimony and after he had completed almost a full day of his own testimony. The record further reflects that the father had already retained three separate attorneys to represent him and that he had engaged in dilatory tactics throughout the course of the hearing. The father had ample opportunity to retain counsel of his own choosing before his request, and he failed to demonstrate that the requested adjournment was necessitated by forces beyond his control and was not a dilatory tactic (*see People v Allison*, 69 AD3d 740, 741 [2010]; *People v Campbell*, 54 AD3d 959, 959-960 [2008]). Under the circumstances, the court providently exercised its discretion in denying the father's request for a 60- to 90-day adjournment to retain new counsel (*see Matter of Wiley v Musabyemariya*, 118 AD3d 898, 900-901 [2014]; *People v Milord*, 115 AD3d at 774-775; *People v Martin*, 41 AD3d 616, 617 [2007]; *Lindenman v Lindenman*, 288 AD2d 352, 353 [2001]; *Natoli v Natoli*, 234 AD2d 591, 592 [1996]; *Matter of Child Welfare Admin. v Jennifer A.*, 218 AD2d 694, 696 [1995]). The father's additional contention that he was entitled to an automatic stay pursuant to CPLR 321 (c) is without merit inasmuch as the father's attorney did not withdraw over his objection (*see Matter of Wiley v Musabyemariya*, 118 AD3d at 899-900). Furthermore, the father's contention that the court erred in failing to conduct an adequate inquiry to ensure that his decision to discharge his attorney was knowingly made and that such failure deprived him of his right to counsel is without merit (*see People v Milord*, 115 AD3d at 775; *People v Goodwine*, 46 AD3d 702, 703 [2007]).

In light of the forgoing, we need not reach the father's remaining contention. Chambers, J.P., Dickerson, Miller and Brathwaite Nelson, JJ., concur.