Matter of Scott v Adrat (2021 NY Slip Op 04361)





Matter of Scott v Adrat


2021 NY Slip Op 04361


Decided on July 14, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 14, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
SYLVIA O. HINDS-RADIX
FRANCESCA E. CONNOLLY
PAUL WOOTEN, JJ.


2019-11995
 (Docket No. F-15916-16)

[*1]In the Matter of Jasmin Scott, respondent,
v
Ileana Adrat, etc., appellant. The Law Office of Katherine Ryan, P.C., Garden City, NY, for appellant.


Legal Services of the Hudson Valley, Peekskill, NY (Shary Enid Sanchez of counsel), for respondent.
Lawrence S. Horowitz, White Plains, NY, attorney for the children.



DECISION & ORDER
In a proceeding pursuant to Family Court Act article 4, Ileana Adrat appeals from an order of the Family Court, Westchester County (Mary Anne Scattaretico-Naber, J.), dated October 3, 2019. The order denied Ileana Adrat's objections to an order of the same court (Michele Reed Bowman, S.M.) dated July 24, 2019, which, after a hearing and upon findings of fact dated July 24, 2019, inter alia, in effect, granted Jasmin Scott's petition seeking child support and directed Ileana Adrat to pay child support in the sum of $1,727 per month.
ORDERED that the order dated October 3, 2019, is affirmed, with costs.
Ileana Adrat and Jasmin Scott entered into a same-sex relationship in November 2008. The parties agreed to conceive and raise children together in December 2008 or January 2009. They began attempting to conceive through artificial insemination. After an alleged domestic violence incident, the parties broke up in November or December 2009. The evidence at a hearing established that the parties resumed their relationship between two weeks and two months later. Beginning in February 2010, the parties went to a new fertility clinic. In April 2010, Scott learned that she was pregnant with twins, and the children were born later that year. After another domestic violence incident in April 2011, the parties terminated whatever relationship they had at the time, and Scott and the children moved out of the home. It is undisputed that Adrat last saw the children at a court appearance in May or June 2011 and has not supported the children since that time.
On December 27, 2016, following the Court of Appeals' ruling in Matter of Brooke S.B. v Elizabeth A.C.C. (28 NY3d 1), Scott filed a petition seeking child support against Adrat. Adrat moved to dismiss the petition, and the Support Magistrate referred the matter to a Family Court Judge for a hearing on the issue of whether Adrat was legally responsible for the support of the children. By amended order dated February 5, 2019, the Family Court found that Adrat is the non-biological parent of the children, and thus, responsible for financially support them. The court remitted the matter to the Support Magistrate for the issuance of an order of support. By order dated July 24, 2019, made after a hearing, the Support Magistrate, inter alia, in effect, granted Scott's petition and directed Adrat to pay child support in the sum of $1,727 per month. Adrat filed [*2]objections to the Support Magistrate's order. By order dated October 3, 2019, the court denied the objections, and Adrat appeals.
"It is fundamental public policy in New York that parents are responsible for their children's support until age 21" (Matter of Shisgal v Abels, 179 AD3d 1070, 1072 [internal quotation marks omitted]; see Family Ct Act § 413). In Matter of Brooke S.B., the Court of Appeals held that "where a partner shows by clear and convincing evidence that the parties agreed to conceive a child and to raise the child together, the non-biological, non-adoptive partner has standing to seek visitation and custody under Domestic Relations Law § 70" (28 NY3d at 14). In this case, the parties stipulated that the issue before the Family Court was whether the parties agreed to conceive the children and to raise them together.
The credible evidence adduced at the hearing established that the parties planned jointly for the children's conception, participated jointly in the process of conceiving the children, planned jointly for their birth, and planned to raise them together (see Matter of Heather NN. v Vinnette OO., 180 AD3d 57, 62). "'Great deference should be given to the Family Court's credibility determinations, as it is in the best position to assess the credibility of the witnesses'" (Matter of Alterman v Smushkovich, 183 AD3d 559, 560, quoting Matter of Ferrer v Brown, 165 AD3d 929, 930), and we discern no reason to disturb the credibility determinations of the Family Court.
The credible evidence demonstrated that both parties attended appointments with two fertility specialists, Adrat injected the sperm into Scott at one such appointment, Adrat paid for half of the out-of-pocket fertility treatment expenses, Adrat selected the location of the baby shower and distributed the invitations, Adrat paid for most of the baby shower, friends and family members of both parties attended the baby shower, Adrat attended prenatal appointments, Adrat was present for the birth of the children and cut the umbilical cord of at least one of them, Adrat assisted in selecting the name of one of the children, and Adrat purchased items for the children and shared in caring for them. Adrat also held herself out as the children's mother during Scott's pregnancy, called Scott her "baby mama," and told friends and family that she was expecting babies with Scott. On the day of the children's birth, Adrat signed Scott's hospital admission documents voluntarily and without hesitation. After their birth, Adrat referred to the children as "my girls." Accordingly, the Family Court properly found that Adrat was a parent of the children (see Matter of Brooke S.B. v Elizabeth A.C.C., 28 NY3d at 14; Matter of Heather NN. v Vinnette OO., 180 AD3d at 61-62).
Contrary to Adrat's contention, it was not error for the Family Court to consider post-conception behavior in determining the existence of a preconception agreement (see Matter of Brooke S.B. v Elizabeth A.C.C., 28 NY3d at 14; Matter of Heather NN. v Vinnette OO., 180 AD3d at 61-62; Matter of Frank G. v Renee P.-F., 142 AD3d 928, 930-931). Also contrary to Adrat's contention, the fact that the parties broke up in late 2009 did not require a finding that Adrat did not agree to conceive and raise the children together. The parties' break-up was brief, and after the parties reconciled, Adrat actively took part in the in vitro fertilization process at a new fertility clinic.
Contrary to Adrat's contention, the Family Court providently exercised its discretion in denying her request for an adjournment to obtain new counsel, as the request came on the third day of the hearing and the matter had been pending for nearly 1½ years (see Ramdas v Ramdas, 176 AD3d 988, 988; Matter of Eckstein v Young, 176 AD3d 813, 814; Greenberg v Greenberg, 144 AD3d 625, 631).
Adrat's remaining contentions are either improperly raised for the first time on appeal or without merit.
AUSTIN, J.P., HINDS-RADIX, CONNOLLY and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court